## EZRA P. BENNETT *vs.* GEORGE W. IVES.

A party intermeddling with the estate of a deceased person, and doing acts which an administrator alone may do, will make himself liable as executor *de son tort*. Otherwise, where the acts are mere acts of friendliness or charity.

The defendant received moneys of an estate, (a small amount deposited by the deceased in a savings bank,) and paid it all out on claims for expenses of the funeral and of the last sickness. Held, that these acts made him an executor *de son tort*.

The defendant was treasurer of the savings bank, and claimed that his payments were to be regarded as official and the act of the bank. He had however no express authority from the bank, and the payments were made at his discretion among the creditors of the deceased, and not in the ordinary manner of paying out the funds of the bank. Held, that the act must be regarded as his personal act.

An agent committing a positive and obvious wrong, can not relieve himself from personal liability by showing that he was acting for or by command of another.

All claims for expenses of the last illness of a deceased person are of equal degree. An executor has no right, under our statutes, to prefer one of that class over another. If the estate is not sufficient to pay all, it must be divided pro rata among them.

The same rule with regard to the payment of debts which applies to a rightful executor, applies also to an executor *de son tort*.

ASSUMPSIT against the defendant as executor of Henry Wolf, deceased.

Wolf died intestate, leaving a small sum of money on deposit in a savings bank, of which the defendant was treasurer. After his death his brother brought his bank book to the bank and left it. The by-laws of the bank provided that "all payments made to the person producing the depositor's book should be valid and effectual." The duty of the treasurer was "to receive and pay out all moneys belonging to the cor-

poration." The plaintiff was a physician and attended the deceased in his last illness. After his death the plaintiff notified the defendant of his claim, and forbade his paying out the money on deposit. Afterwards the defendant, without taking out letters of administration, and without express authority from the bank, paid out the whole amount to other parties, to wit: $23.86 to the sexton who buried the deceased, and the remainder to certain friends of the deceased for services rendered during the last illness. The claims thus paid were all just and reasonable. The plaintiff then brought the present suit, claiming that the defendant by these acts had made himself an executor *de son tort*. The defendant pleaded that he was never executor; that he had fully administered; and that in paying out the money he had acted merely as treasurer, and that his act in doing so was the act of the bank and not his personal act.

The facts were found by the superior court and the case reserved for the advice of this court.

*Taylor* for the plaintiff.

The defendant was liable as executor *de son tort* at common law, and the same rule prevails in Connecticut. 1 Wms. Exrs., 226, 7 ; *Padget* v. *Priest*, 2 T. R., 97 ; *Bacon* v. *Parker*, 12 Conn., 212 ; Rev. Stat., tit. 14, sec. 31. He surrendered the bank book, and received the money as an individual. The plea of *plene administravit* will not avail the defendant at common law. 1 Wms. Exrs., 237, 8 ; *Neal* v. *Baker's Exrs.*, 2 N. Hamp., 477 ; Wentworth Office of Exrs., ch., 14, p. 335, (14th ed.) ; *Mountford* v. *Gibson*, 4 East, 453 ; 2 Bla. Com. 508. Nor under our statutes, for the estate is to be considered as solvent. *Bacon* v. *Parker*, 12 Conn., 212, 217 ; *Sacket* v. *Mead*, 1 Conn., 13, 18, 25.

*Averill* and *Brewster* for the defendant.

The deposit was a general one, and created a mere debt of the bank. Ang. & A. on Corp., § 243 and note ; *Story on Bailment*, § 88 ; *Grant on Banking*, 1, 2 ; *Coffin* v. *Anderson*, 4 Blackf., 395; *Pott* v. *Clegg*, 16 Mees. & Wels., 320; *Daw-*

son v. *Real Estate Bank*, 5 Ark., 283; *Commercial Bank* v. *Hughes*, 17 Wend., 94; *In re Franklin Bank*, 1 Paige Ch., 249. The money paid out was the bank's own property, not that of the deceased. The defendant's paying the money was the act of the bank. If paid to one not authorized to receive it, its debt is not discharged. It is still liable to a proper administrator. *Rex* v. *Cheadle Savings Bank*, 1 Adol. & El., 323; *Cochrane* v. *O'Brien*, 2 Jones & LaTouche, 388. But paying funeral and other expenses out of one's own funds will not make a party an executor *de son tort*. Shep. Touchstone, 487–8. Such acts are commendable. See authorities cited below, and *Morrill* v. *Morrill*, 13 Maine, 415.

The defendant acted within the scope of his authority as treasurer. If he has done wrong, he is liable only to the bank. 1 Saund. Pl. & Ev., 108; *Stone* v. *Cartwright*, 6 T. R., 411; *Brown* v. *Lent*, 20 Verm., 529; *Harmon* v. *Tappenden*, 1 East, 555; 2 Hilliard on Torts, 490; 2 Kent Com., 629; *Colvin* v. *Holbrook*, 2 Comst., 126.

A party may pay funeral expenses without becoming an executor *de son tort*. This has been always held. Paying a small item of the expenses of the last illness comes within the same principle. *Bacon* v. *Parker*, 12 Conn., 212; *Camden* v. *Fletcher*, 4 Mees. & Wels., 378; 1 Rolle's Ab., 918, *Exr.*, C 2, *Pl.* 4; 1 Wms. Exrs., 227, 9, (Amer. Notes, Ed., 1859); Toller on Exrs., 40; 1 Swift Dig., 452; 2 Greenl. Ev., § 343; *Harrison* v. *Rawley*, 4 Ves. Jr., 216; *Magner* v. *Ryan*, 19 Mo. 196; *Turner* v. *Child*, 1 Dev. Law R., 25; *Densler* v. *Edwards*, 5 Ala., 31.

But if held as executor, the defendant has fully administered, by paying debts of equal or superior degree to that of the plaintiff. 1 Wms. Exrs., 233; 2 id., 925; Toller on Exrs., 365; Wood's Inst., bk. 2, ch. 6, 327; 2 Bla. Com., 508; Shep. Touchst., 475; *Graysbrook* v. *Fox*, 1 Plowd., 282; 2 Greenl. Ev., §§ 345, 348; *Coulter's case*, 5 Coke, 30; *Oxenham* v. *Clapp*, 2 Barn. & Adol., 309; *Leach* v. *House*, 1 Bailey, (So. Ca.,) 42; *Weeks* v. *Gibbs*, 9 Mass., 74; *Glenn* v. *Smith*, 2 Gill & Johns, 493; *Gay* v. *Lemle*, 32 Miss., 309;

*Kinard* v. *Young*, 2 Rich., Eq. R., 247 ; *Hill* v. *Henderson*, 13 Sm. & Marsh, 688 ; *Saam* v. *Saam*, 4 Watts, 432 ; *Nass* v. *Van Swearingen*, 7 Serg. & R., 196 ; *Neal* v. *Baker*, 2 N. Hamp., 477 ; *U. States* v. *Hoar*, 2 Mason, 317.

Under our statute, (Rev. Stat., tit. 14, § 61,) an executor may prefer debts in the same degree. *Flitner* v. *Hanley*, 6 Shepley, 270.

SANFORD, J. In the case of *Bacon* v. *Parker*, 12 Conn., 212, the doctrine of the common law in regard to the liability of an individual who, without being appointed executor or taking letters of administration, intermeddles with the estate of a deceased person, was distinctly recognized as applicable and operative here, so far as it is not inconsistent with the general principles and policy of our law regarding the settlement of estates. In that case Church, J., in giving the opinion of the court, says :—" There are many acts of a stranger which will constitute him an executor *de son tort*, such as taking possession of the assets and converting them to his own use, paying debts or legacies, releasing debts, &c., and indeed any acts done which belong to the office of an executor, and furnish evidence to creditors of his being such. And yet there are other acts, equivocal in their character, and such as are ordinarily performed by an executor, which when explained, as they may always be, will appear to be mere acts of kindness and charity, and such as will not subject a stranger to the actions of creditors ; such as locking up and preserving the goods, ordering the funeral obsequies, making a schedule of assets, feeding the cattle, repairing the houses, &c. All these, and perhaps many other acts, may be necessary for the comfort of the family and the preservation of the estate before a will can be found and proved, and before administration can with propriety be commenced."

This we think expresses our law on the subject. The object of the rule is to discourage and prevent the unnecessary interference of strangers with the affairs of deceased persons, without imposing unreasonable restraints upon the generous emotions of Christian sympathy, charity and friendship. And

in order to charge one with the liabilities of an executor in his own wrong, "the material fact to be found is, that the party has intruded into the office of executor, and this may well be inferred from such acts as are lawful for an executor alone to do, such as collecting, releasing and paying debts, or any other acts evincing a claim of right to dispose of the effects of the deceased." 2 Greenl. Ev., § 343. Toller on Exrs., 37. 2 Bac. Ab., 555. 1 Swift Dig., 451. Com. Dig. *Admr.*, C. 1. 5 Coke, 33 b, 34 a. 3 Salk., 161. Carth., 104.

The acts of this defendant clearly indicated the possession of authority to administer the estate. He paid the debts claimed by the friends of the deceased, and he paid the sexton's bill, out of the sum left by Wolf in the savings bank; thus assuming to decide upon the validity and reasonableness of these demands, and appropriating the assets of the estate to their extinguishment; acts of no equivocal import, but which, according to all the authorities, belong to the office of an executor or administrator only, and are lawful for him alone to do; acts for the immediate performance of which there was no pressing necessity, and which the defendant was bound to know, and therefore we presume did know, were unauthorized by law.

We have no occasion to controvert the claim of the defendant's counsel, that the money deposited became at once the property of the bank, and thus the bank became the debtor of the depositor. Nor is it important now to decide whether the payments in fact made, exonerated the bank from its liability to pay the money again to a rightful administrator. The defendant personally intermeddled with the affairs of the estate, and thus subjected himself to the suits of creditors, whatever the effect of his conduct upon the liability of the bank may be.

It is said that the money deposited having become the property of the bank, and the defendant being treasurer of the corporation, these payments were payments by the bank, and out of its own funds, and not out of the assets of the estate by this individual defendant. But the treasurer as such had no authority from the corporation, or under its charter or by-

laws, to make such a disposition of its funds. It was his province and duty to receive and pay out all moneys belonging to the corporation, but to pay these moneys in the ordinary manner and to those who were entitled to receive it. He had no right to pay the money out at his discretion among the creditors of the depositor, and the parties whom he paid had no right whatever to such payments, or to the money so deposited, as the defendant must have well known. The by-laws of the corporation indeed provide that all payments which shall be made to the person producing the depositor's book shall be valid and effectual. But the depositor's book in this case was not produced by the parties to whom these payments were made. It had before been left at the bank by a brother of the deceased. No authority therefore was derived under this by-law for such payments. But however this may be, the actual perpetrator of a positive and obvious wrong can never exonerate himself from personal liability by showing that he was acting as the agent or servant of another, or even by his superior's command. Story on Agency, §§ 308, 320. 1 Saund. Pl. & Ev., 74. *Lysley* v. *Clark*, 14 Eng. L. & Eq., 510. And besides, the superior court has found the fact that these payments were made by the defendant, and that he paid out the very fund left by Wolf in the bank. Upon this finding therefore the defendant personally assumed the control of this money, in effect collecting it of the bank and arbitrarily appropriating it in satisfaction of such claims against the estate as he chose to pay.

But the defendant claims that even if he has by intermeddling with the affairs of the estate made himself liable to the suits of creditors as executor in his own wrong, yet having paid privileged claims to the full amount of the assets which have come to his hands, he is exonerated from further liability. But as between those friends of the deceased whose bills the defendant paid and this plaintiff, neither of them was entitled to priority. The claims of both were for expenses of the last sickness of the deceased, and therefore of the same degree, and even a rightful executor would have had no right to pre-

fer either of them to the exclusion or injury of the other.   In *Oxenham* v. *Clapp*, 2 Barn. & Ad., 310, Patterson, J., said that " a wrongful and a rightful executor differ in this respect only, that the first is to take no benefit of his own wrongful act. As regards the creditors there is no difference, both may administer the assets in due course of law." So we say, both alike may and must administer the assets in due course of law.   But our law in regard to the payment of debts is not the same as the law of England.   Here, where the assets are insufficient for the full payment of all debts and claims against the estate, payment must be made in the following order; " first, the funeral expenses and the expenses of settling the estate ; secondly, debts due for the last sickness of the deceased ; thirdly, all lawful taxes, and all debts due to the state ; and lastly, all other debts as allowed, in proportion to their respective amounts." Rev. Stat., tit. 14, § 61.   And every creditor is entitled, not only to his appropriate place in the order of priority, but also to his due proportion of the assets with other creditors of the same degree.

Our statute in relation to the settlement of insolvent estates of deceased persons furnishes a cheap and expeditious mode in which the rights of the respective creditors of such estates may be ascertained and adjusted.

If then an executor exhausts the estate in the due and orderly payment of debts entitled to priority, and is sued for a debt of inferior degree to those paid, he may safely stand upon the plea of *plene administravit*, because the assets have thus been duly administered.   But if he has exhausted the assets in the payment of debts not entitled to priority to the plaintiff's, that plea will not avail him, because he has not administered the estate in due course of law.

If in the case at bar the payment of the sexton's bill had exhausted the whole estate, the defendant would have had a good defense because of the priority to which the sexton for such expenses was entitled.   But the bill paid to the friends of the deceased was a debt of the same degree as the plaintiff's, and entitled to no priority or preference before it, both

of them being for the expenses of the last sickness of the deceased.

Judgment therefore should be rendered for the plaintiff.

In this opinion the other judges concurred.