# Brown, Adm'r, v. Walter, et al.

## Bill in Equity for Discovery and Account.

1. *Executor, de son tort; when protected.*—An executor, *de son tort,* can not, by his wrongful act, acquire a benefit, but is protected in all acts, not for his own benefit, which the rightful representative may do.

2. *Same.*—Where one has received and used assets of an intestate, under circumstances constituting him an executor *de son tort,* he may show, when

[Brown, Adm'r, v. Walter et al.]

called to account in equity by the rightful representative, that there are no outstanding debts, and that he has applied the assets for the use and benefit of the distributees, as they must have been applied in due course of administration.

3.   *Widow; what will not constitute her executor, de son tort.*—A widow, retaining and using property exempt from administration, for the support of herself and minor children of her husband, who died intestate without debts, is not guilty of any conversion which can render her an executor *de son tort;* nor can the husband's administrator call her to account for the children's share upon their reaching majority—this right belongs to the children.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. H. AUSTILL.

The facts of this case, as shown by the pleadings and proof, are, that Henry Kruse, a resident citizen of Mobile county, died intestate in July, 1858, leaving a widow and two infant children, his only next of kin, composing his family. At the time of his death, he had some household and kitchen furniture, three or four cows and calves, a few gardening or farming implements, and one or two skiffs, and the sum of fourteen hundred dollars, which he had deposited with a friend. He owed no debts, and his widow paying his funeral expenses, and the expenses of his last illness, kept possession of the personal property, had the care and custody of the infant children, and maintained them until her marriage with the appellee, Mathias Walter, in 1862. After her marriage, the children remained with her and her husband, were maintained and educated by them, until one of them (Mary) was intermarried with the appellant, in 1870. After his marriage, the defendant, Walter, received in Confederate treasury notes the money the intestate had deposited with his friend. Of this sum, he invested eleven hundred dollars in an interest bearing bond of the Mobile & Ohio Railroad Company, for one thousand dollars; the remaining three hundred dollars he used for his own purposes. There was no administration on the estate of Kruse, until 1873, when the appellant obtained letters of administration, and filed this bill, for the purpose of compelling the respondents to account for the assets they had received. The respondents answered, and filed cross-bills (making the two children parties), showing the assets they had received, and averring there were no debts outstanding against the estate, and exhibited accounts showing they had expended for the distributees in their support and education, more than their respective shares of the assets, and prayed to set-off the amounts so expended, against such shares. The evidence sustaining the answers and cross-bills, the chancellor rendered a decree dismissing the original bill, which is now assigned as error.

[Brown, Adm'r, v. Walter et al.]

THOS. H. PRICE, for appellant.—No administration having been taken out prior to Brown's appointment, he was the only lawful representative. The law encourages the settlement of estates through the courts by regular administration, and discourages the irregular outside dealing with assets of the decedents, when each of the parties interested are not *sui juris.* Here the personal representative, after discovering ample assets, is defied because the parties converting it say they have advanced the distributees more than their share, and there are no debts. This interference with the assets, no matter what the motive, made the appellees executors in their own wrong. The administrator had nothing to do with their advancements; and it is against the policy of the law to allow administration to be defeated on that account. It is true, the *distributees,* where there are no debts, can have a distribution without administration; but it does not follow that others intermeddling with the assets can get rid of the demands of the rightful representative by showing no debts, and that they have advanced the distributees as much as they are entitled to. The bill was well filed and the parties held to account. If, after that was had, the assets went to others who were indebted to the defendants, they could protect themselves by appropriate proceedings. The necessity for resort to such proceedings was caused by the fault of defendants, and that should not be visited in the administrator by dismissing his bill. It might be that he knew nothing of the defense, and he is certainly entitled to his account.

RAPHAEL SEMMES, *contra.*—Brown comes into a court of equity asking equity, and he must do equity. He applied for administration fifteen years after the intestate's .death, and having married the intestate's daughter, it is reasonable to believe he knew the facts with regard to his estate, and how his wife had been treated with regard to it. His application for administration was for the purpose of filing a speculative bill. The appellees have done more for the distributees than the law required. What would be the use or equity of a proceeding to compel Walter to account and pay over the value of the assets to the administrator, whose duty it would be to distribute them to persons who clearly owed appellees, for their support, more than the amount they would be entitled to receive? This estate was small; it has been used in the way the law and a regular administration would have devoted it, and it is not the policy or spirit of our laws to encourage useless litigation with respect to it. The complainant's case shows that he asked a court of equity

to compel appellees to do a "vain thing," and the court below rightly refused its aid for such a purpose.

BRICKELL, C. J.—The theory of the original bill is, that the respondents having, without authority of law, without a grant of administration from the proper tribunal, intermeddled with, and converted the assets of the intestate, are liable to account therefor to him, as the rightful representative. There is no aspect of the case, in which Mrs. Walter could be charged as an *executor de son tort*. The only intermeddling with the assets in which she participated, before or after her marriage, was with the cattle, the household and kitchen furniture, and the gardening or farming implements. These were exempt from administration, and she was entitled to their possession, as against a rightful representative, or all who could not show a title paramount to that of the intestate.—R. C. §§ 2061–63. The infant children, on separating from the family, were entitled to a division, and an equal share with her, of so much of such property as remained *in specie*. This is a right to be asserted by them, and not by the personal representative of the intestate. In reference to this property, she could not be guilty of a wrongful intermeddling, or conversion, which would render her an *executor de son tort*. To constitute such an executor, there must be an usurpation of the authority of the rightful representative.

The case, then, resolves itself into the single inquiry, admitting as it must be admitted, that Walter, by collecting and using the money of the intestate, which was on deposit, became liable as an *executor de son tort*, can he, when sued by the rightful representative, show there are no debts outstanding against the intestate, and that he has applied the assets for the use and benefit of the distributees, as they must have been applied if he had been the rightful representative. While an *executor de son tort* cannot, by his wrongful acts, acquire any benefit, he is protected in all acts, not for his own benefit, which the rightful representative may do; and it may be laid down, as a general rule, that all his lawful acts are good, affording him full protection. He could not at common law, as the rightful representative could, retain for his own debt; but this exception rested on the policy of preventing a race between creditors, to obtain possession of the assets, without taking administration. It would have enabled him to derive an advantage from his own wrongful acts. 4 Bac. Ob. 31-34; 1 Lomax Ex'rs, 177-185. There being no debts, no necessity for a rightful administration, except to make distribution, if the executor *de son tort* has applied the

[Berry et al. v. Ferguson et al.]

assets to the benefit of the distributees, in equity, he should be protected. The rightful administration is an unnecessary and expensive ceremony, from which no good can result.—*Vanderveer v. Alston*, 16 Ala. 494. If the distributees had, in the present case, as they might have done, sought from the defendants an account of the assets, it will not be doubted the defendants could have retained for the advancements made in their maintenance and education. The appellant, there being no creditors, is in equity but a trustee for the distributees. If he received the assets from the respondents, he would be compelled to hand them over to the distributees, and they would be compelled to pay them back to the respondents in reimbursement of the advancements. There is no reason for any such process, which could result in benefit to no one, and would result in loss to the respondents.

The decree of the chancellor is affirmed.