CLORINDA MAURO, *Admx. vs.* ACHILLE G. VERVENA, *Conservator.*

MARCH 23, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is a petition in equity to establish the claim of the petitioner, in her representative capacity, against the respondent, as conservator of the Columbus Exchange Trust Company, and is brought under the provisions of public laws 1933, chap. 2019. The right of the petitioner to bring her petition in its present form and under said chapter was upheld by this court in *Mauro* v. *Vervena,* 58 R. I. 24, when the matter was before us on appeal after the respondent's motion to dismiss the petition for want of jurisdiction had been granted by the superior court.

Thereafter the petition was heard on its merits by a justice of that court, and a decree was entered denying and dismissing the claim of the petitioner. From the entry of that decree she duly prosecuted to this court the appeal which is now before us.

The evidence herein shows that on March 23, 1933, the respondent was appointed conservator of the above-named trust company by the state bank commissioner under the terms of chap. 2019, *supra*. One Carmina Loffredi, also known as Carmela Loffredo, the mother of the petitioner, had in said trust company a participation account, the balance in which was $402.96 on March 31, 1933, the date of said Carmina's death. In April 1933 the undertaker who had conducted her funeral asked the respondent for a payment from such participation account in order to apply it on his bill. At that time no administration had been taken out upon the estate of Carmina Loffredi.

After some consideration the respondent suggested that the undertaker procure from the heirs at law of said Carmina a bond to protect the respondent in the event that he made such a payment, which bond was to be signed by the undertaker also, as surety. This procedure was carried out, and the petitioner was one of the heirs at law who signed the bond. She was then a minor, being nineteen years of age, but that fact was not made known to the respondent when he, at that time, sought information from the heirs on this point. After coming of age the petitioner, until just before she instituted proceedings against the respondent, never indicated any repudiation of her act in signing this bond. After its execution on April 29, 1933, the respondent paid from said account to the undertaker the sum of $200, being approximately the amount the respondent was permitted to pay out from said account as a first dividend in liquidation of the trust company.

In July 1933 the undertaker asked the respondent for another payment from the account. The respondent told him that no further payment could be made for some considerable time, but suggested that it was permissible to have the account transferred to one who was indebted to the trust company, in which case the balance in the account would then be set off against that indebtedness, and the

undertaker could make his own arrangements to receive the money from such third person. As far as the respondent or the trust company was concerned no cash would be involved in this transaction.

Eventually such an arrangement was put through, and the account in question was closed. In carrying out the matter, a withdrawal slip dated July 18, 1933 was signed by the heirs at law including the petitioner. Also, the undertaker delivered to the respondent the former's bill in the amount of $738.80 against the estate of the petitioner's mother, receipted in full under date of May 5, 1933. Dividends amounting to 90% of the depositors' accounts were paid to them by the respondent in liquidating the affairs of the trust company.

On May 22, 1933 the petitioner was appointed administratrix of her mother's estate, and on June 28, 1935 made a formal demand upon the respondent for the payment to her of all dividends which had or should have become payable on her mother's said account, contending that the account in question had been wrongfully closed by the respondent. The latter denied the correctness of the petitioner's claim to any dividends on said account, maintaining that the payment therefrom was lawful and that the account was otherwise properly closed.

Generally speaking the contention of the petitioner is correct, namely, that one who intermeddles with the property or estate of a deceased person is not viewed with favor, as the law contains ample provisions for bringing about the orderly settlement of such estates, with proper regard for the rights of all persons interested therein. At common law one who so intermeddles is usually considered to be in the position of an executor *de son tort,* and as such to be liable to the true representative of the estate and others aggrieved for all damage caused thereto. *Clabburn* v. *Phillips,* 245 Mass. 47; *Bennett* v. *Ives,* 30 Conn. 329.

However, it is also held that "although an executor *de son tort* will be denied the right to derive any benefit from his office he will be protected in all acts, not for his own benefit, which a rightful executor may do. So he may discharge himself by showing that he has applied the assets in his hands as they lawfully could have been applied by the rightful executor . . . ." 11 R. C. L. 461. The cases of *Brown* v. *Walter,* 58 Ala. 310 and *Lenderink* v. *Sawyer,* 92 Neb. 587, cited to us by the respondent, in general support the statement of law just above set out.

The respondent maintains that in the instant case he is entitled to be discharged in so far as the petitioner's claim is concerned, because the evidence shows that he applied the bank account in question as it lawfully should have been applied, *viz.,* in payment of the deceased's funeral expenses, and hence, that his acts are governed by the principles of law above quoted. It appears from the evidence herein that the heirs of Carmina Loffredi, at the time the bond in question was executed by them, represented to the respondent that there were no debts against the estate of the deceased other than her funeral expenses, and a statement to that effect was set out in the bond. Further, there were apparently no known debts left by petitioner's mother at the time of her death, and no claim against the mother's estate has ever been filed by any alleged creditor thereof either in the probate court or with the petitioner as administratrix.

In the present proceeding no question was raised by anyone concerning the amount of the undertaker's bill, and such amount is, therefore, not now in issue. The evidence also tended to show that the petitioner's mother had some life insurance, the nature of which does not appear in evidence; that the proceeds of this insurance were collected and retained by a brother of the petitioner; and that she has brought an action against him which is now pending. In fact, it would appear that petitioner's real complaint is

that she has received no distributive share from her mother's estate.

The trial justice found that the respondent had applied the entire amount of the deposit in question to the payment of the funeral expenses of Carmina Loffredi, and that he was protected in so doing under all the facts and circumstances appearing in evidence. We are of the opinion that the decision of the trial justice is supported by the weight of the evidence and is in accord with the law properly applicable to such evidence.

In attacking the findings of the trial justice the petitioner argues that the entire bank account was not used to pay the bill of the undertaker. While it is true that by the transaction which took place in July 1933 the undertaker did not receive a direct payment from the respondent, the purpose and result of such transaction was to settle said bill, and the fact that the matter was consummated by means of the assistance of a third person did not invalidate the proceeding. The ultimate effect of the whole transaction was to relieve the estate of petitioner's mother of any claim for the latter's funeral expenses.

The petitioner also calls attention to the fact that the bill of the undertaker, which was delivered to the respondent, was receipted by the former as paid under date of May 5, 1933, some two months prior to the transaction in July when the account in question was finally closed by the respondent. The latter in his testimony explained this situation by stating that, after the bond had been executed by the heirs in April 1933, it was considered that the undertaker had "a full call on the money or the balance that remained there", and that the entire amount was his and had been applied to the payment of his bill and was "perpetually" at his order. The only question open was the method and time of withdrawal. Under all the facts and circumstances appearing herein the explanation, in our judgment, appears to be reasonable.

The petitioner also contends that, even though there were no other claims against her mother's estate, the charges of administration thereon constitute a claim prior to the funeral expenses of the deceased. General laws 1923, chap. 365, sec. 33 reads in part as follows: "If the estate of a decedent is insufficient to pay his debts, the same, after deducting the charges of administration and such property as is set off and allowed to the widow and family, shall be applied to the payment of his debts and charges in the following order: *First.* The necessary funeral charges of the deceased . . . ."

Broadly speaking the contention of the petitioner is sound. However, the facts of the instant case must be given consideration. The evidence does not disclose clearly whether or not there are other assets of the mother's estate. If there are any such other assets then they may properly be used to satisfy the charges of administration. On the other hand, if such is not the case, then, in our opinion, the petitioner was not justified in performing the useless act of taking out administration more than two years after her mother's death, thus creating an unnecessary charge for administration expenses against her nonexistent estate. This is particularly so in view of the fact that such assets as her mother left were properly expended, immediately after her death and before any administration was applied for, in the settlement of her funeral expenses, a claim which under the statute is given priority second only to the charges of administration and certain family allowances. In view of all the facts appearing in the instant case, this contention of the petitioner is without merit.

She next directs our attention to the provisions of G. L. 1923, chap. 363, sec. 30, which is as follows: "Any person who shall embezzle or shall, without being thereto authorized by law, injuriously intermeddle with any personal property of a deceased person shall be liable as an executor in his own wrong to the creditors and other persons ag-

grieved." In our opinion this statute is of no aid to the petitioner. It is clear that it applies only to instances where the intermeddling of unauthorized persons causes injury or damage to the estate of the deceased, thereby creating the liability referred to in the statute.

Upon an examination of the evidence in the present case we do not find that the acts of the respondent brought about any injury or damage to the estate of the petitioner's mother. The respondent merely used the bank account to satisfy the bill for the deceased's funeral expenses at a time when, under the statute, they constituted the only claim against her estate. In this connection see *Merrill* v. *Comstock,* 154 Wis. 434, in which the court held in substance that it must appear that the decedent's estate had been damaged in order to permit a creditor or other aggrieved person to recover from one who had taken or interfered with the property of a deceased person. At page 441 the court used the following language: "There was no wrong done to the other beneficiaries of the estate at the time the widow took and applied these assets in payment of the preferred claims. Her act in so doing did not become such a wrong because of the subsequent administration or because the widow failed to file her claim in the right of preferred creditors in such subsequent administration."

As supporting her right to a recovery in the present case, the petitioner relies largely on the holdings in *Clabburn* v. *Phillips, supra,* and *Bennett* v. *Ives, supra.* These cases, however, are clearly distinguishable on their facts from the case now before us and, therefore, are not authority herein. In the first of these cases it appeared that the defendants were landlords, who were creditors of their tenant to a considerable amount, and, on the latter's death, seized and sold his personal property and applied the proceeds of the sale to the debt. The tenant's estate was apparently insolvent, and there were other substantial claims against it. The defendants were held liable to the plaintiff, who had been

250

appointed administrator of the tenant's estate. The defendants' claim against the estate was general and not entitled to any priority.

In the second case the plaintiff, a physician, brought his action against the treasurer of a bank in which the decedent had a small account. There was no administration and the defendant had used the money in the account to pay the sexton for expenses in connection with the decedent's funeral, and had also paid some of the creditors who were in the same general class as was the plaintiff, but had not paid the latter. The plaintiff was allowed to recover against the defendant as an executor *de son tort,* but, at page 335, the court said: "If . . . the payment of the sexton's bill had exhausted the whole estate, the defendant would have had a good defense because of the priority to which the sexton for such expenses was entitled."

The matters hereinbefore discussed, in our judgment, are determinative of the present case, and it is not necessary for us to pass upon other points briefed and argued by the parties. Upon consideration of all the facts and circumstances appearing herein, and for the reasons above indicated, we are of the opinion, therefore, that the decision of the trial justice, holding that the respondent was entitled to protection as to his dealings with the bank account in question, and dismissing the petition, was without error.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Emilio D. Iannuccillo,* for petitioner.

*Greenough, Lyman & Cross, Owen P. Reid,* for respondent.