## Myron Northrup v. Attilus D. McGill.

*Contract construed: Partners: Sale: Security.* A contract of sale by one partner to another of his share and interest in the store and business, together with the goods and all accounts and demands due the firm, which provided for the payment by the purchaser, of all debts of the firm, and of the purchase price, one-quarter down and the balance on time, secured by a lien on "said goods," etc., is construed to contemplate the holding of the entire goods, and not simply the proportion thereof so sold, as security for the performance of the terms of the purchase.

*Partners: Shares: Presumption.* Partners are presumed, in the absence of any showing of their respective interests, to be equal partners.

*Trover: Mitigation.* A defendant in trover can not show in mitigation of his unlawful taking of the plaintiff's property, his own unauthorized and unsanctioned application of the fruits of his tort, upon a naked personal demand of his own against the plaintiff, not in judgment, nor a lien upon the property converted.

*Submitted on briefs April 30.     Decided May 6.*

Error to Sanilac Circuit.

*Watson Beach, O'Brien J. Atkinson* and *Trowbridge & Atkinson,* for plaintiff in error.

*A. E. Chadwick,* for defendant in error.

GRAVES, J.

On the 17th of June, 1869, the parties entered into the following written agreement:

NORTHRUP v. McGILL.

" This agreement, made this 17th day of June, A. D.. 1869, between Attilus D. McGill, of the first part, and Myron Northrup, of the second part, both of Lexington, Sanilac county, Michigan, witnesseth : that for and in consideration of the sum of four hundred dollars, to him to be paid, the said Northrup hereby sells to McGill his share and interest in the drug store and business heretofore carried on by them, together with the stock of medicines, drugs, wines, liquors, toilet articles, perfumery, and the entire lot of goods now in their store in Lexington, and also all accounts and demands due the firm of A. D. McGill & Co., all to become the property of said A. D. McGill, provided said McGill shall pay to said Northrup four hundred dollars, as follows : One hundred dollars down ; one hundred dollars three months from date ; one hundred dollars nine months from date, and one hundred dollars fifteen months from date, with interest at ten per cent., according to the tenor of three promissory notes, bearing even date herewith, and also pay all debts contracted by. the late firm of A. D. McGill & Co., and until the said sums are paid,. as aforesaid, said Northrup shall have a lien on said goods,. drugs and medicines, wines and liquors, in the nature of a chattel mortgage, and in default of said payments may take· possession of the same, and take such further steps as may be necessary to secure the. payment of ,such sums of money."

About the first of September, 1870, the store was destroyed by fire, and only a small part of the stock was saved, and this was taken by Northrup and appropriated. McGill sued him in trover and recovered one hundred and fifty-seven dollars. Exceptions were taken on the trial, and a part of them are now insisted on as sufficient to overturn the judgment.

The most material question in its bearing upon the judgment, relates to the construction of the written agreement. The circuit judge gave the case to the jury on the hypothesis that when Northrup sold to McGill they were equal partners in the concern, and that Northrup bargained only

an undivided half of the stock, and acquired or reserved a lien merely on that interest.

There is no express evidence that the parties had been partners at all, or of the quantity of the interest which Northrup held or sold. The contract undoubtedly suggests the idea that the parties had been partners, and the trial seems to have proceeded on an assumption that they had carried on business in that way up to the time of the agreement. The circumstances may, therefore, be thought to close that question.

Supposing that they were partners, the law would, doubtless, in the absence of explanations or of facts leading to another inference, fully authorize the presumption that they were equal partners. It was proved, and not disputed, that Northrup had some interest when he made the agreement, and whatever it was, in kind or quantity, the agreement made it security, so far as it went, in the "goods, drugs, medicines, wines and liquors," for the payment of the sale price. Indeed it is not denied that his security extended to an undivided half. But I think the contract was intended to go further and to give him security on the whole interest in the "goods, drugs, medicines, wines and liquors" on hand at the time.

The parties had been carrying on a drug store and had a stock on hand. They held demands and accounts more or less, against their customers. They were indebted to some extent themselves. Northrup was selling to McGill not only his interest in the drugs and other things of that sort, but also in the demands due from customers. He would still be liable upon the debts of the concern. He was to receive but one hundred dollars in hand, and the only security contemplated beyond the personal responsibility of McGill, for the payment of the old debts and the purchase price, consisted of goods, drugs, medicines, wines and liquors then in the store.

The parties contemplated that the business would go on and that the stock to be covered as security would be

diminished daily. It was competent for the parties to involve the whole interest as security, and it was certainly, under the circumstances, not only natural and reasonable, but consistent with common prudence to do so. It would have been strange if Northrup had not desired, or if McGill had declined, to arrange the matter upon a basis to give the former something more substantial and ample by way of security, for the payment of the old debts and the balance of the purchase price for the demands and accounts and other property, than a bare undivided half of some of the tangible property.

The circumstances then would strongly incline us to expect and look for something more, and when the agreement is appealed to, we think it manifest that the parties agreed upon something more. The lien or claim by way of security is not there confined to a partial interest, but is expressly put upon " said goods, drugs and medicines, wines and liquors." If an undivided interest had been aimed at, it is fair and reasonable to assume that the parties would have expressed themselves so as clearly to indicate that purpose; and when we observe that in the granting part of the instrument Northrup is expressly made to sell only " *his share and interest*," the assumption finds evidence in its support in the very terms of the writing. When the parties meant a partial interest, they had it in their minds to say so expressly. These considerations lead to a result opposed to the ruling of the circuit judge on this branch of the case.

It appeared in evidence that Northrup had sold the goods taken by him, at public auction, and after deducting five dollars for expenses, had applied the balance on one of the notes given by McGill and secured by the mortgage, and that subsequently he had recovered judgment on such note, and had allowed the sum so applied as payment. There was also evidence that among the articles he took and sold were some not covered by the mortgage. He thereupon contended that as all the property taken, and as

well that not embraced by the mortgage as that which it covered, or rather a portion of its value, had gone to pay McGill's debt to him, the damages claimed against him for the conversion were required to be reduced correspondingly.

The circuit judge acceded to this view as to all the property covered by the mortgage, but rejected it as to any other, and as the defendant in error still contends that such application as to any portion of the property not covered by the mortgage, was admissible in defense by way of mitigation, and the question may arise upon another trial, it is proper to notice it.

It is admitted that in ordinary cases the full value at the time of conversion of the property converted, together with interest on that value, affords a correct measure of damages in trover. But it is also said very truly that this rule yields when the facts require it, to the principle on which the rule itself rests, namely: that the recovery in trover ought to be commensurate and only commensurate with the injury, whether that injury be less or greater in extent than the full value of the property and interest, and it is argued that this principle of justice regularly led to the admission of evidence on behalf of Northrup that on his own motion and without the assent or sanction of McGill, he applied on the McGill note which he held, sixty-eight dollars of the seventy-three dollars which he got for the goods.

While the law is settled that in trover a defendant may show in mitigation of damages that the goods have been voluntarily restored and accepted, or have been recovered by the plaintiff at an expense to him of less than the value, the cases are not in harmony upon the point that the defendant is entitled to show his subsequent application of the things converted, or their avails, upon a demand which the law has liquidated against the plaintiff.

The cases cited by the plaintiff in error countenance the defense. But several New York cases, and the late English

case of *Edmondson v. Nuttall, 17 Com. B., N. S., 280,* are opposed to it.   Still there is less real diversity, when the facts of the respective cases are looked into, than the opinions given would indicate, and examination proves that the courts which reject the view adopted in New York and England and extend the greatest indulgence to defenses of this kind, have not gone so far as to decide that one who seizes the property of another without color of authority is entitled to show in mitigation or exoneration, his own unauthorized and unsanctioned application of the fruits of his tort, upon a demand held against the plaintiff by himself, and which at the time of application is a naked personal claim or demand not attaching by way of lien or security to the property, and wholly unliquidated by any legally regulated proceeding.   It is best, perhaps, to notice the cases cited on this subject.

In *Pierce v. Benjamin, 14 Pick., 356,* the defendant, being collector of taxes, seized and sold the property upon a lawful tax against the plaintiff.   The *sale* was illegal, but the tax was valid and as veritable in law as a judgment.   The collector had applied the proceeds of the sale upon this tax, and the court held that in the suit against him by the person who was bound to pay the tax, he might prove the fact in mitigation.

*Doolittle & Chamberlain v. McCullough, 7 Ohio St., 299,* was a very exceptional case upon the facts, and it can not be safely cited as authority upon the point in question. In *Baldwin v. Porter, 12 Conn., 473,* the defendant claimed that the plaintiff had regained his property through the agency of another party and at an expense much less than the value of the converted chattels, and was not permitted to give evidence to prove it, and the court on error held that the exclusion of the evidence was wrong.

In *Curtis v. Ward, 20 Conn., 204,* the defendant caused the plaintiff's goods to be attached.   Whilst the goods were held in custody under the seizure so made, the levy was erased and the writ discontinued, and a new writ was taken

and levied on the goods. Judgment was then obtained in the suit commenced by the second writ, and execution being issued upon it, the goods were taken and sold and the proceeds applied on the judgment. Curtis, the defendant in attachment, then sued Ward, the attaching creditor, for converting the goods, and counted on the seizure made under the first attachment. The court allowed Ward to show the facts and the application of the goods or their proceeds on the judgment, in mitigation of damages.

From this summary it plainly appears that the cases cited lend no support to the claim that it was competent for Northrup, if guilty of conversion, to show in mitigation of damages that without any direction or sanction on the part of McGill he had applied the converted property, or a portion of it, on the paper he held against McGill, and no case is recollected which goes far enough to sustain such a position.

In general, when there is no fraud, and when the law does not forbid, a man may dispose of his own property according to his own ideas of propriety. If he is indebted by note to different parties, he may apply his property to the payment of one, and refuse to apply it to the payment of another, and he may lawfully discriminate in this way, though in doing so he ignores the stronger moral claim resting upon him. This results from the supreme dominion which is involved in the absolute ownership of property. No creditor, without process, and without authority or right, except such as belongs to him as creditor, can dispossess his debtor of his goods and then mitigate or defeat a recovery by showing that the property taken has, without any assent or concession of the debtor, been applied on the debt.

Such intervention must have the sanction of the debtor or the law. The opposite view would lead to gross oppression and unlimited abuses. The creditor would be enabled to take the law into his own hands, and to unite in himself the power to judge and execute in his own favor and

according to his own pleasure. We are therefore of opinion that on this part of the case there was no error.

The other points alluded to on the argument are unimportant, and will not be likely to arise again. The judgment should be reversed, with costs, and a new trial ordered.

The other Justices concurred.