GOLDMAN *v.* O'HARA.

1. PARTNERSHIP — PRESUMPTIONS — EVIDENCE OF SHARE OF PARTNERS.

Partners are presumed, in the absence of any showing of their respective shares, to have equal interests.

2. SAME.

Conflicting evidence that partners held different shares of the joint venture is considered and *held,* to sustain a finding that complainant was entitled to one-half the profits.

3. SAME—FIDUCIARY RELATIONS—IMPLIED TRUST.

Where a corporation made an alleged sale of its interest in certain contracts for the sale of machinery, to one of the partners, an officer of the company, in consideration of the amount due on the contracts and of an additional bonus, and handled the financial arrangements arising out of the transaction and kept records thereof on its books, and eventually sold the machinery at a profit to the copartnership, it stood in fiduciary relations to the copartners as to profits made and retained by it.

4. SAME—AGENCY.

One of the partners as agent of the firm had authority to make the agreement to pay the bonus, whether he so agreed before or after the formation of the copartnership.

Appeal from Wayne; Mandell, J. Submitted January 10, 1911. (Docket No. 60.) Decided March 13, 1911.

Bill by Hyman L. Goldman against Charles J. O'Hara and the C. C. Wormer Machinery Company, for an accounting. From a decree for complainant, defendants appeal. Modified and affirmed.

*Moore & Moore,* for appellants.

*Henry C. Walters,* for appellee.

STONE, J. This is a suit in equity for an accounting

brought by complainant against Charles J. O'Hara and the C. C. Wormer Machinery Company growing out of an alleged special verbal partnership transaction entered into about March 17, 1906, involving the purchase and sale of the plant of the Auto Brass & Aluminum Company of Flint, a bankrupt.

The complainant seeks to charge the defendant O'Hara in the sum of $2,158.88 (being $1,886.37 and interest), that being a one-half interest in the profits, as complainant claims, of the alleged partnership transaction entered into and completed between the said complainant and defendant O'Hara. The complainant also seeks to charge the defendant C. C. Wormer Machinery Company, as a constructive trustee of the said amount; it having been the recipient of that amount of money out of the proceeds of the partnership transaction, without his knowledge or consent. The defendant O'Hara claims that the agreement was to prorate the profits on the basis of the amount of the investment of each.

It appears that on March 1, 1906, the Auto Brass & Aluminum Company was adjudged a bankrupt, and the complainant was a creditor in the sum of $1,272. Among the assets of said bankrupt company was certain machinery purchased on contracts from the C. C. Wormer Machinery Company, in which the vendor reserved the title, until paid for, and upon which contracts there had been paid $3,507.72, leaving a balance due at the time of the adjudication in bankruptcy of $6,266.27 of principal. The said Wormer Company also proved up a claim against the bankrupt company of $4,970.95 for rental of the said machinery during the period of default in payments. However, the Wormer Company had not declared the contracts in default, and had not demanded the return of the machinery. Prior to the adjudication, and about February 28, 1906, there had been a meeting of the creditors of the Auto Brass & Aluminum Company at Flint, and Clarkson C. Wormer, president of the Wormer Company, attended that meeting. While in

Flint Mr. Wormer gave an option on the Wormer Company interest, under the said contracts, to Mr. Goff of the Buick Company, to take over the same at the face of the indebtedness aforesaid ($6,266.27), and an additional $100 to cover expenses and attorney's fees. The complainant testified that the next day after Mr. Wormer's return from Flint, he (Wormer) offered to sell the Wormer Machinery Company's contract rights for $6,000. This is virtually denied by Mr. Wormer in his testimony. During the time the option to Mr. Goff was in force, and in the early part of March, defendant O'Hara, who was treasurer of the said Wormer Company, claims to have made an offer to Mr. Wormer to give the Wormer Company the face value of its said contracts, pay attorney's fees, and a bonus of $1,500 for the company's rights under the contracts. Mr. Goff failed to exercise his option, and later, at a meeting of the directors of the Wormer Company held some time between the middle of March and the 1st of April, 1906, the offer of O'Hara was accepted. No record of this meeting was kept, and no writing of any kind passed between the parties until June 18th, when the Wormer Company assigned its contracts to O'Hara. No time was fixed for payment to the Wormer Company by O'Hara.

On March 17, 1906, at Flint, the trustee in bankruptcy held a sale of the plant of the Auto Brass & Aluminum Company, subject to the contract rights of the Wormer Company. Mr. O'Hara, representing the Wormer Company, and also the complainant, were present at the sale.

It is the claim of the complainant, that, just previous to the time of the sale, he and O'Hara entered into their verbal partnership arrangement to bid in the plant, buy up the claims of one or two of the largest creditors, and then hold the plant intact until a suitable purchaser could be found, and it could be sold to advantage; that O'Hara represented that he could arrange with the Wormer Company for its contracts; and that it was agreed between O'Hara and complainant that they should jointly bid in

the plant, each contributing one-half of the purchase price, but the bid was to be made in O'Hara's individual name; that it was understood that the proceeds of the sale by the partnership, when finally made, should be used, first, to pay the claims of the complainant and of the Wormer Company in full, at their face value—each partner was to receive back his share of the purchase price advanced, and the balance, after deducting expenses, was to be divided between the two parties as profit; that defendant O'Hara did not communicate to complainant that he, O'Hara, had agreed to give the Wormer Company a bonus of $1,500, and to pay its attorney's fees. Complainant further claims that he understood that the Wormer Company was to receive only the face value of its claim under its contracts, being the amount remaining unpaid thereon. O'Hara bid in the plant for $4,200, and on March 22d, complainant drew a check for his half of the purchase price.

This sale of March 17th was enjoined by Judge Swan of the United States district court, on the application of the Wormer Company, which company asserted the right to detach, take down, and entirely remove all the machinery, appliances, and materials mentioned in the contracts above referred to. Judge Swan finally modified the original order, and ordered the sale to take place, subject to the contract rights of the Wormer Company, from which order the Wormer Company appealed to the circuit court of appeals. The petition to the circuit court of appeals was sworn to by Clarkson C. Wormer, president, on March 29, 1906, and alleges error on the part of Judge Swan in refusing to permit the Wormer Company to repossess itself of the machinery and remove the same from the plant of the bankrupt. The second sale was held on March 30, 1906, at which the complainant bid in the plant in his own name, but under the partnership arrangement agreed upon at the former sale, whatever that may have been. The purchase price of $4,175

was paid by complainant to the trustee of the bankrupt by two checks.

On April 5th following, complainant received from defendant O'Hara, a Wormer Company note for $1,000, and a check for $1,087.50, being one-half of the said purchase price last mentioned. On April 6th complainant bought in the claim of the Great Western Smelting & Refining Works against the bankrupt company for $1,700. He received from defendant O'Hara, as his half of the purchase price of this claim, a Wormer Company note for $850, payable July 7, 1906. On May 27, 1906, complainant executed a bill of sale of the plant to the defendant O'Hara, who was assembling title for convenience of transfer. From time to time parts of the material and stock were sold, and on June 18th the Wormer Company formally assigned its contracts to defendant O'Hara, which assignment completed his title, and he executed a bill of sale for the entire plant, including the Wormer Company machinery, to C. H. Booth for the Peerless Heater & Valve Company for $18,000. This sale was brought about through the efforts of complainant. A part of the $18,000 was settled by notes signed by Booth and the Peerless Company, and indorsed by complainant, for the reason that O'Hara and the Wormer Company refused to accept the Booth notes, unless indorsed by complainant.

A few days thereafter, the complainant endeavored to have an accounting with defendant O'Hara in regard to the partnership profits. In fact, he called on O'Hara at the office of the Wormer Company a number of times every week for about 15 months, when he finally got a statement from O'Hara on August 19, 1907. This statement contained the charge of $1,500 as bonus. The complainant claims and testified that in and by this statement he first learned that O'Hara had agreed, or claimed to have agreed, to give the Wormer Company a bonus of $1,500 and pay certain attorney's fees. The evidence shows that defendant O'Hara received all moneys on account of the partnership transactions and turned the same over to the

Wormer Company; and all moneys paid out were paid through the Wormer Company office by notes or checks. Defendant O'Hara put all the transactions through the Wormer Company books under the heading of "C. J. O'Hara Flint Plant" account. On June 20, 1906, $1,500 was credited to the Wormer Company and charged to the "C. J. O'Hara Flint Plant" account.

At the hearing, testimony having been taken in open court, the circuit judge filed an opinion, and entered a decree against both defendants in favor of complainant for the sum of $2,158.88. From this decree the defendants have appealed.

The questions involved for our consideration are:

(1) The terms of the partnership agreement, with respect to the division of the profits of the enterprise between the two parties in interest, and this involves the total amount of the profits realized, and the portion of the profits still due complainant; it being conceded by defendant O'Hara that there is something due the complainant.

(2) The responsibility or liability of the C. C. Wormer Machinery Company to the partnership, and especially to the complainant, as the custodian of the partnership funds which, it is claimed, it knowingly permitted, through its officers, to be appropriated by its treasurer, defendant O'Hara, with full knowledge that complainant was claiming a part of the fund at the time of the appropriation.

1. As to the agreement, the circuit judge found that complainant and defendant O'Hara entered into a partnership agreement to advance, in equal amounts, the money necessary to purchase the plant of the Auto Brass & Aluminum Company and several claims against it, and that they were to share equally in the profits after payment was made to complainant for the full amount of his claim, and to the Wormer Company for the face value of its claim, not including the rental claim. Not only should we feel reluctant to change the finding of the circuit judge upon this question of fact, under the circumstances, but we have carefully read the record, and are satisfied that upon this subject the circuit judge reached the right con-

clusion. The evidence clearly preponderates in favor of the complainant upon this branch of the case. Not only is this true, but we are aided by a legal presumption. Partners are presumed, in the absence of any showing of their respective interests, to be equal partners. *Northrup* v. *McGill*, 27 Mich. 234.

We are, however, unable to agree with the circuit judge in his disposition of the claim of $1,500 charged up by the defendant O'Hara. By a clear preponderance of the evidence found in the testimony of the defendant O'Hara, the witnesses George Pulasky, C. C. Wormer, and Frederick F. Wormer, it appears that O'Hara undertook and agreed to pay the Wormer Company, over and above the face of its claim, the sum of $1,500, which may be termed a bonus, or claim made by it, upon condition of the sale of its interest in the machinery, on which it had a claim under its contracts with the bankrupt company. There is evidence tending to show that there was a great demand for this machinery in the market, and that, although second hand, it was as good as new for all practical purposes. The company was in position to retake this machinery and dispose of it; but instead of doing that, it elected to take the face of its claim of $6,266.27 and interest, and $1,500. It had a right to make such a bargain with O'Hara whether he was a real purchaser, or whether he was acting for it in the sale of the property. It had the right to name a sum for which it would assign its contracts. We cannot follow the circuit judge in the view which he took of the legal aspect of this matter. Whether the bargain was made between O'Hara and the Wormer Company before or after the copartnership agreement between complainant and O'Hara is not controlling. If before the partnership agreement, then O'Hara had a right to turn the property into the partnership concern at what it cost him. If such contract was made after the partnership was formed, then O'Hara was the agent of the partnership, and represented it in the agreement to pay. So, in either view of the case, we think that the complainant

should be charged with one-half of the $1,500, and that amount should be deducted from the sum awarded to the complainant by the court below. In all other respects we agree with the circuit judge as to the terms of the agreement.

2. Coming now to the question of the liability of the Wormer Company to the complainant, we think it clearly appears that the entire detail of the transaction was known to the Wormer Company, passed through its books, and the entire financial part of the matter was handled by the said company. We gather from the testimony that the company knew of the relations existing between complainant and O'Hara, at least to the extent of knowing that the complainant had an interest in the proceeds of the sale. In this view of the case, it stood in fiduciary relations both with complainant and O'Hara, and there was at least an implied trust growing out of such relations.

Another view of the case which the evidence strongly tends to support is that, as between O'Hara and the Wormer Company, there never was any sale of this machinery; that O'Hara acted for the Wormer Company, and while there was a transfer in form to O'Hara, he was neither more nor less than its agent to sell, having guaranteed to it a certain price. In numerous places in his testimony he refers to the fact that he had guaranteed to the company a certain price. And in his optional agreement of sale to Booth of May 23, 1906, instead of describing himself as the owner, he states that he is possessed of authority to make the sale; and in the petition of the Wormer Company to the court of appeals the company is described as the owner of the property, and that long after it claims to have made the sale to O'Hara; and as late as May 15, 1906, in a letter written by the Wormer Company to the trustee in bankruptcy, the property is spoken of as "owned by our company." In this view of the case, the defendant Wormer Company would be liable for any money that came into its hands, or under its con-

trol belonging to the copartnership.    In either view of the case, therefore, we think the circuit judge was correct in the conclusion he reached as to the liability of the said company.

The decree of the circuit court will be modified as heretofore indicated as to the $1,500, one-half of which should be charged to the complainant, and the decree in all other respects will be affirmed, except that the appellants will be awarded costs of this court against the complainant.

MOORE, MCALVAY, BROOKE, and BLAIR, JJ., concurred.