FREDERICK W. CLABBURN, administrator, *vs.*
HARRY F. PHILLIPS & others.

Suffolk. November 14, 1922. — May 23, 1923.

Present: RUGG, C.J., DeCOURCY, CROSBY, & CARROLL, JJ.

*Executor and Administrator. Conversion. Landlord and Tenant.*

A landlord has no lien for overdue rent upon personal property of a tenant on the rented premises, and, if after the death of the tenant he takes possession of such personal property and sells it before any proceedings relating to the estate in the Probate Court, he becomes an executor *de son tort* and is liable to the rightful executor or administrator, when appointed, in an action of tort for conversion.

Where, in an action of the character above described, it appears that the amount of personal property in the hands of the rightful executor or administrator is not sufficient to pay the debts of the intestate, the provisions of G. L. c. 195, § 14, do not permit the debt due to the defendant from the decedent to be considered in reduction of damages from "the full value of the personal property . . . taken and . . . all damages caused by" the defendant's acts "to the estate."

TORT by the administrator of the estate of George S. Clabburn, late of Boston, for the conversion of certain assets of the estate after the death of the intestate and before the plaintiff's appointment. Writ dated February 16, 1920.

In the Superior Court, the action was tried before *Raymond,* J. The facts upon all issues excepting that of the value of the goods alleged to have been converted were agreed to. Material facts are described in the opinion. The jury found the fair market value of the goods on the date of the conversion to have been $4,650; and the judge ordered a verdict for the plaintiff in that amount with interest to the date of the verdict; and the defendants alleged exceptions.

*R. S. Wilkins,* for the defendants.

*C. H. Donahue,* for the plaintiff.

RUGG, C.J. This is an action of tort by an administrator against the defendants for the conversion of personal property of the intestate after his death, which occurred on April 23, 1919. The intestate was a tenant of the defendants and during his life conducted business on the demised premises. He was considerably indebted to the defendants who, after his death, took possession of his personal property on the demised premises, sold it and applied the proceeds toward the payment of his debt due to them for rent. The report is not quite clear as to the total of debts due to the defendants, but nothing turns on the exact figures. The aggregate due to the defendants and a trust estate in which they are interested appears to be in excess of $14,000. The jury found that the value of the property converted by the defendant was $4,650. The intestate owed $5,500 to persons other than the defendants and the estate in which they are interested. The assets of the estate of the intestate exclusive of the claim which is the basis of this action are $137 in cash and a claim for less than $400 which is contested and for which action is pending. Thus his estate appears to have been insolvent, although it has not been represented insolvent.

The defendants contend that in this action they have a right to recoup or set off the amounts due them against the

claim of the plaintiff for the value of the property of the intestate of which they took possession.

The defendants as landlords had no lien for their overdue rent on the property of the intestate as their tenant. *Preston v. Neale,* 12 Gray, 222.

The defendants in taking possession of the property of the intestate and in selling it acted without authority of law and became (to use the ancient phrase of the law) executors *de son tort,* that is to say, executors in their own wrong.

It is plain that in ordinary actions to recover damages for the conversion of personal property, the defendant may show in reduction of damages that he has sold the property and applied the proceeds to the payment of a debt due to him from the plaintiff. *Pierce v. Benjamin,* 14 Pick. 356, 361.

The rule of law applicable to executors in their own wrong when sued for conversion of the estate of a deceased person is different. It was said in *Carey v. Guillow,* 105 Mass. 18, at page 21: " An executor in his own wrong shall not recoup his own debt." That statement finds abundant support in decisions of undoubted authority. *Coulter's Case,* 5 Co. Rep. 30. *Ayre v. Ayre,* Ch. Cas. 33. *Curtis v. Vernon,* 3 T. R. 587. *Vernon v. Curtis,* 2 H. Bl. 18, 21. *De La Guerra v. Packard,* 17 Cal. 182, 192. *Baumgartner v. Haas,* 68 Md. 32, 37. *Glenn v. Smith,* 2 Gill & J. 493, 513. *Brown v. Leavitt,* 26 N. H. 493. *Turner v. Child,* 12 N. C. 331. *Kinard v. Young,* 2 Rich. Eq. (S. C.) 247, 251. *Partee v. Caughran,* 9 Yerg. 460. The only exception to this rule at common law appears to have been when the executor in his own wrong, who has retained property to satisfy his own debt, subsequently was appointed administrator. In such case he was permitted to retain payment of his own debt in order " to avoid the inconvenience and absurdity of a party's instituting a suit against himself." Toller's Law of Executors, 368, and cases there cited. Com. Dig. Administration (4th ed.) C. 3, page 352. *Vaughan v. Browne,* Stra. 1106; *S. C.* Andrews, 328.

This rule is supported by sound reason. The peaceable, orderly and just settlement of the estates of deceased persons requires that the property be marshalled in the hands

of the executor or administrator for payment of all his creditors on the basis of equality, so far as it will go, with the special preferences established by the statute, and, if anything is left, for settlement of legacies or distribution among next of kin. That is the purpose of our statutes. Priorities of claims among creditors of the same class is not encouraged. Even attachments of real and personal property commonly are dissolved by the death of the debtor, to the end that there may be equal distribution of the estate among those entitled. G. L. c. 223, § 116. *Taylor* v. *Badger*, 226 Mass. 258, 260.

Provision is made in our statutes for instant appointment of a special administrator to preserve property and to do whatever may be necessary for the protection of the interests of all persons concerned. Such appointment may be made at any time and place and takes effect notwithstanding an appeal. G. L. c. 193, §§ 10 to 16. Any creditor after the expiration of thirty days from the death of his debtor may apply for administration on his estate. Means exist in appropriate cases for the speedy settlement of estates by a public administrator. G. L. c. 193, § 1.

The statutes make careful provision also for the ascertainment by adjudication of claims of an executor or administrator against the estate which he is settling. G. L. c. 197, §§ 2, 6, 7. *Wood* v. *Farwell*, 195 Mass. 559. *Gahm* v. *Gahm*, 243 Mass. 374.

In view of all these provisions of the law for securing the settlement of the estates of deceased persons in orderly fashion with adjustment according to equitable principles of all adversary contentions, it would be unseemly to hold valid the acts of creditors in seizing property of decedents as security for their own claims. Such conduct would tend to create disorder, to disturb the last moments of life of those owing debts, to produce inequality in the distribution of estates, and to shake public confidence in the power of the law to deal justly with all controversies. The law and the statutes make ample provision for settling all disputed questions and distributing estates of deceased persons with due regard to the rights of all.

The doctrine of executors in their own wrong is recognized by our statutes. G. L. c. 195, §§ 14, 15. The former of these sections, which apparently had its rise in 1 Prov. St. 1692-3, c. 14, § 3, in its original, intervening and present statutory forms probably is nothing more than declaratory of the common law. By the latter of these two sections it is enacted that " An executor in his own wrong shall be liable to the rightful executor or administrator for the full value of the personal property of the deceased taken by him and for all damages caused by his acts to the estate; and he shall not be allowed to retain or deduct any part of such estate, except for funeral expenses or debts of the deceased or other charges actually paid by him and which the rightful executor or administrator might have been compelled to pay." This section appeared for the first time and in substantially its present form in Rev. Sts. c. 64, § 12, and has been so continued in all revisions to the latest. In the commissioners' report of 1834 on this section are found these words: " This section is intended to conform to the existing law on this subject; and to define the extent to which an executor in his own wrong is liable to the rightful executor or administrator. His liability to creditors is sufficiently established and known. Stat. 1783, c. 24, § 16. Toller's Law of Executors, 286, 7, 8 and 369." This comment of the commissioners shows that in this respect it was their purpose merely to declare the common law. Without pausing to determine the precise meaning of this section, it is manifest that the defendants do not come within any permissible interpretation of the exception there stated. Nothing in this record indicates that the administrator might have been compelled to pay the claims of the defendants, because the estate appears to have been hopelessly insolvent. The Probate Court is the appropriate tribunal for the adjustment of conflicting claims arising in connection with the estates of deceased persons, whether solvent or insolvent.

The argument of injustice under all the circumstances of requiring the defendants to pay the full value of all the property taken by them is urged strongly in their behalf. Every rule of law is likely at some time to appear to work

an injustice or to be harsh in its application. The rule here invoked by the plaintiff is a sound one. Observance of the ample provisions made by law for the orderly settlement of the estates of deceased persons with equal regard for the rights of all having an interest in it is essential for the well-being of society. Conformity to those provisions would have relieved the defendants of all difficulty. Courts cannot abandon a plain rule of law at will in order to accomplish what some might think a closer approach to the ideal in a particular case. Caprice would then be substituted for law. Different judges might entertain different views. "*Quot judices tot sententiœ.*" Certainty would cease. *Mabardy* v. *McHugh*, 202 Mass. 148, 152. The principle here enforced is ancient, supported by sound reason, and excellently adapted to present needs and conditions. It would be out of harmony with the general theory underlying the law as to the settlement of the estates of deceased persons to permit a creditor to secure a preference by converting to his own use property of the estate after the death of his debtor.

*Judgment on the verdict.*