MICHAEL-SWANSON-B R A D Y PRODUCE COMPANY, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY and UNION PACIFIC RAILROAD COMPANY, Appellants.*

Kansas City Court of Appeals. May 15, 1925.

1. **TROVER AND CONVERSION:** Joint Tort-feasors: Shipper and Railroad Diverting Shipment to Another Held Jointly Liable to Consignee for Conversion Thereof. Where shipper and railroad diverted shipment to another than consignee on shipper's order, *held* joint tort-feasors, since they all participated in conversion, and jointly liable regardless of their intent in so doing.

2. ———: ———: Damages: Restitution by One Tort-feasor in Whole or in Part May be Shown in Mitigation of Damages by Other Joint Tort-feasors. Where one of two or more joint tort-feasors in conversion has made restitution, either in whole or in part, to the owner, and restitution has been accepted as such by said owner, then the restitution and the amount thereof may be shown in mitigation of damages by the other joint tort-feasors when sued.

3. ———: Carriers: In Suit for Conversion Fact That Consignee Received Car of Apples Other Than Car Diverted Held no Defense. Where consignee of carload of apples, diverted by shipper, did not agree to accept another car delivered to it and not paid for, as a substitute car in lieu of the one diverted, and though not complaining as to quality or kind of apples, would not agree to anything until its controversy with shipper about demurrage charges and quality of some other shipments was settled, delivery of such other car *held* not available to railroad as a defense to suit for conversion.

4. ———: Damages: Wrongdoer Cannot, in Mitigation of Damages, Show Unsanctioned and Unauthorized Application of Proceeds of His Tort. Where, after conversion of property has been returned and same accepted and retained by owner, the one proceeded against in conversion can show such fact in mitigation of damages, but he cannot compel the owner to accept or agree to a disposition made of goods converted by wrongdoer, nor can latter, in mitigation of damages, show unsanctioned and unauthorized application of proceeds of his tort.

*Corpus Juris-Cyc. References; Carriers, 10 C. J., p. 262, n. 64. Trover and Conversion, 38 Cyc., p. 2055, n. 33; p. 2102, n. 11; p. 2103, n. 13.

Appeal from the Circuit Court of Jackson County.— *Hon. Allen C. Southern,* Judge.

AFFIRMED.

*J. R. Kaspar* and *Hal R. Lebrecht* for respondent.

*Watson, Gage & Ess* for appellant.

TRIMBLE, P. J.—Plaintiff, a corporation engaged at Kansas City in the wholesale produce business, brought this suit to recover damages for defendants' conversion of a carload of apples.

The answer, in addition to a general denial, set up that if there was a conversion, the same was waived by plaintiff accepting, in lieu of the car in question, another carload of apples of the same kind, character, quality, amount and value. The reply denied this.

At the close of all the evidence, plaintiff asked an instruction telling the jury that under the law and the evi-

dence, their verdict must be for plaintiff and that the jury should assess plaintiff's damages, if any, at such sum as they should find was the reasonable market value of the shipment at destination on the date of the conversion, to which they might add interest at six per cent from date of conversion.

The court refused to give said instruction as asked, but modified it by adding these words: "Unless you find from the evidence that plaintiff has received and accepted a credit, if any, in mitigation of their damages, as set out in instruction No. A."

Instruction A, thus referred to, was one given at defendants' request telling the jury that if the shipper delivered the other car to plaintiff at Kansas City and gave plaintiff credit for the invoice price thereof in lieu of the car originally shipped, and notified plaintiff of such credit, if any, and that if plaintiff accepted said credit, if any, and thereafter made no attempt to pay said shipper for the said car, then plaintiff's recovery, if any, is subject to a credit of whatever sum they might find was the actual carload market value of said car of apples at destination on date of delivery.

The jury returned a verdict for plaintiff, assessing its damages, however, at only the nominal sum of one dollar.

Plaintiff's motion for new trial being duly filed, the court sustained the same, assigning as a reason therefor that the court erred in not giving the peremptory instruction asked by plaintiff. The defendants have appealed.

The car of apples alleged to have been converted was purchased by Brady, a member of plaintiff firm and acting as its agent, at Payette, Idaho, on October 17, 1921, of Denny & Company, a large commission firm of Chicago, acting through its local agent, Mr. Hogue.

It seems that plaintiff ordered fifteen cars of apples of Denny & Co., of which *twelve* were delivered and paid for at time of delivery. As Brady would get the bill of lading for each car at Payette, he would issue his draft

on plaintiff for the price thereof which was the same as a check for the amount due on the apples. He could not get the car of apples or the bill of lading without giving this draft or check, and he paid for the car in question in this way, namely, a draft or check for $1058.40 for 756 Boxes of Rome Beauty apples. This car of apples was Car C & N W No. 32262, shipped on straight bill of lading consigned to plaintiff at Denver. Plaintiff in buying apples in that western territory would have them shipped to itself at Denver and there it would have them diverted to wherever the plaintiff desired the different cars to go.

On October 24, 1921, plaintiff gave defendant, Union Pacific Railroad Company, its order to divert the said car to plaintiff at Kansas City. It is conceded that this car of apples was never delivered to plaintiff at Kansas City. There is no question but that Denny & Company, after Car C & N W No. 32262 arrived at Denver, gave to the Union Pacific Railroad Company a diversion order and in obedience thereto, the latter sent said car to St. Louis consigned to Denny & Company, where it was sold by the latter to a produce company of that city. Just when this diversion order was received is not shown, but defendants' evidence disclosed that at the time said diversion order from Denny & Company was received by the railroad the car in question was at Denver and was, in obedience to said order, sent to St. Louis, consigned to Denny & Company.

The record also shows that under a diversion order given on October 24th as plaintiff's was, a car at Denver would arrive in Kansas City on October 29th. Defendant's evidence is, however, that it would "possibly" not go on the "team tracks" until October 30th.

On October 29th, plaintiff at Kansas City received from Denny & Company a car of Rome Beauty apples known as N. P. Car No. 96702. This was the twelfth car of apples received by plaintiff at Kansas City from Denny & Co., just as the car which Brady had bought and

paid for at Payette was the twelfth car bought; and plaintiff says it received the N. P. Car No. 96702 under the impression it was delivered under the fifteen-car con- tract hereinbefore mentioned. Brady, who was acting for plaintiff in the purchase of apples at Payette, had to go to Colorado before all of the fifteen cars were delivered, and only twelve cars were delivered while Brady was at Payette, all of which were paid for by him as hereinbe- fore stated, and they were consigned to plaintiff at Den- ver.

But this other Car, N. P. No. 96702, went *via Minne- apolis* to Kansas City consigned to plaintiff. Over what road it went is not shown in the record.

Defendants claim that through an error on the part of Denny & Company's Idaho office in failing to notify its Chicago office that Car C & N W No. 32262 had been sold to plaintiff, the Chicago office of Denny & Company sold said car to a concern in St. Louis, after it had been bought and paid for by plaintiff at Payette. However, the evidence of Denny & Company's Vice-president that the car was diverted on account of the above error was stricken out as immaterial; and since the Car C & N W No. 32262 was *billed to plaintiff*, it is not seen how the railroad could be justified in obeying Denny & Company's order to divert the car to St. Louis. Indeed, the defend- ants do not seek to justify its obedience of the Denny & Company's diversion order on that ground or in fact to *justify* it on any ground, since defendants admit in their brief that the Union Pacific Railroad Company "through an error" accepted the diversion order of Denny & Company.

The contention of defendants is that Denny & Com- pany, being a joint tort-feasor with the defendants in diverting the car C & N W No. 32262 to St. Louis, had a right to make a payment or restitution to plaintiff of that of which it had been deprived by the conversion, and that such payment or restitution so made by Denny & Company could be shown in evidence by the defendant

railroads in mitigation of damages. The contention is further that Denny & Company made such restitution or payment by delivering to plaintiff the car of apples known as N. P. No. 96702 and applied the credit of $1058.40 due plaintiff to the purchase price of the said car.

There can be no doubt but that the defendants and Denny & Company were, as to plaintiff, joint tort-feasors, since they all participated in the conversion; and it makes no difference as to the intent they had in so doing. [State v. Pate, 268 Mo. 431, 438.] There was a joint conversion, since the acts of each, though separately committed, tended to the same end. [38 Cyc. 2055.] And all who commit a joint trespass are jointly liable for the consequences. [Ess v. Griffith, 128 Mo. 50, 62; Mohr v. Langan, 162 Mo. 474.]

It is likewise undoubtedly true that where one of two or more joint tort-feasors in conversion has made restitution, either in whole or in part, to the owner, and restitution has been *accepted* as such by said owner, then the restitution and the amount thereof may be shown in mitigation of damages, by the other joint tort-feasors when sued. [Pierce v. Benjamin, 14 Pick. 356, 361.] Also that where there is joint liability *satisfaction* in full of the cause of action by one of such tort-feasors is a bar to an action against the others, and a *partial* satisfaction by one may be shown in mitigation of damages. [13 Cyc. 68; Hemmelberger, etc., Lumber Co. v. Dallas, 165 Mo. App. 49, 55.] It is not incumbent upon us to decide whether the owner's *acceptance* is necessary where the *identical property converted* is returned, for that is not the case here. The restitution relied upon is the claimed *substitution* of another car of apples for the one converted, and the claim is that the car substituted was one of the same kind, quality and amount as the one converted. This, it seems, would require the plaintiff owner's *acceptance* of the car as restitution and, indeed, the

defense recognizes this feature since the answer pleads such acceptance on the owner's part.

The question, therefore, of whether defendants are entitled to rely in whole or in part upon the defense pleaded depends upon the state of the evidence in the case.

Plaintiff's evidence is that the Car C & N W No. 32262 was 756 boxes of "orchard run face and fill" Rome Beauty apples for which it paid $1.40 per box plus seventy cents freight to Kansas City, making the apples cost $2.10 per box, which was reasonable, and the market value of such applies at the time delivery should have been made was from $2.10 to $2.50 per box.

Mr. Michael, of plaintiff's firm, testified that N. P. Car No. 96702 arrived in Kansas City on or about October 29th and was received by plaintiff; that the car was not billed via Denver as all of the cars plaintiff purchased were billed, but came to Minneapolis, and was diverted to Kansas City by Denny & Co.; that the car did not contain 756 but only 712 boxes and the invoice was for $999.60 instead of $1058.40; that nothing was said about substituting this car for the other car that had been paid for; that plaintiff did not pay for this car; that they had a controversy or a difference with Denny & Company over demurrage on some other cars; and plaintiff did not pay for said N. P. Car No. 96702 but held up payment for same for the purpose of effecting a settlement of its difference with Denny & Company amounting from $150 to $200; that there was nothing ever said about substituting this car for the other car until after this lawsuit arose.

On cross-examination he admitted he couldn't explain how it was that the N. P. Car No. 96702 came from Minneapolis instead of Denver like all the others and was delivered without payment being required; that he couldn't show that any demand had ever been made by Denny & Company for said apples, and though car-

loads of apples were sent to and received by them without payment being exacted yet such was not done and the matter allowed to run without request for payment for two years and a half as in this case; that he wondered over many peculiar things about the transaction in which the Car No. 96702 was sent, but, after the matter had been tied up a long time, he "figured" that possibly Denny & Co. had been taken care of in some manner by the railroad company.

Defendants introduced the evidence of the Vice-president of Denny & Co., who testified that from October 20 to November 5, 1921, the market price in Kansas City of apples of the kind, grade and quality called for in Car No. 32262, was from $2 to $2.05 per box including freight; that at the time of the purchase and shipment of said car his company had fifty or more cars of such apples in transit; that one of these was Car N. P. No. 96702 containing exactly the same number of boxes of the same kind, grade and quality of Rome Beauty apples, as in Car C & N W No. 32262, and when his company discovered that Car C & N W No. 32262 had been sold to plaintiff and paid for and had also been sold by them in St. Louis, they did not collect from plaintiff the sale price of Car N. P. No. 96702; that they gave plaintiff credit on their books for the invoice price of that car to compensate it for the loss of the other car. He further testified that they notified plaintiff of such credit but does not state *when* that was done, except that his evidence shows that it was not done until after the converted car had been sold at St. Louis and the proceeds received. He further testified that they had no controversy with plaintiff over the condition or quality of the apples in Car N. P. No. 96702 or the value thereof, but that "during that same season" there was a controversy over demurrage and the condition of two other cars shipped at another time, and plaintiff wanted that settled before they would give full credit on the matter of Car N. P. No. 32262.

There is no evidence ·that Denny & Co. diverted Car N. P. No. 96702 as a substitute for the other car, nor any evidence that plaintiff, *at the time it was delivered,* knew it was being consigned to it as a substitute car, nor evidence that *at that time* it was accepted as a substituted car; but, as stated before, plaintiff's evidence is that it was accepted on the idea that it was the twelfth car purchased under the fifteen-car contract, while defendants' evidence shows that Denny & Co. did not credit plaintiff with the price of the so-called substitute car until after they had received the proceeds of the sale at St. Louis of the converted car. Said sale at St. Louis did not occur until November 4, 1921, so that if Denny & Co. notified plaintiff that they had credited the amount paid by plaintiff for the car that was converted on the price of the so-called substitute car, it was long after the conversion and long after the so-called substitute car had been received by plaintiff.

Now, it is manifest from the testimony on both sides that a controversy existed between Denny & Co. and plaintiff over demurrage charges and the quality of some other shipments, which amounted to something between $150 and $200, and this difference has never been agreed upon and is yet wholly undetermined. So where is there any evidence that plaintiff accepted the so-called substitute car in lieu of the other one? The controversy between plaintiff and Denny & Co. is over the difference between the value of the apples in car No. 96702 and the offset plaintiff has against Denny & Co. for demurrage and inferior quality of apples in another shipment, and this difference is still undetermined and unliquidated, and in no wise agreed to. How then can defendants in this case rely upon the defense or mitigation they have pleaded? The case before us may be thus stated: The defendants are sued for a conversion which it admits, but because plaintiff has received from defendants' joint tort-feasor a car of apples for which it has not paid,

defendants are seeking to offset the value of that car against defendants' liability notwithstanding the fact that there is a controversy and difference between plaintiff and Denny & Company which has never been adjusted or determined, and this controversy is over a separate matter solely between Denny & Co. and plaintiff, and with which defendants have nothing to do. We do not think this can be done. Defendants' evidence does not show, as they have pleaded, that plaintiff agreed to accept the car it got, as a substitute car, all that defendants' evidence shows is that plaintiff made no complaint as to the quality or kind of apples but would not agree to anything until their controversy was settled. Consequently, we do not see how defendants can avail themselves of the fact that plaintiff has received a car of apples from Denny & Co. for which it has, as yet, paid nothing. As said in Gulf, etc., R. Co. v. Rotter Bros., 104 S. W. 402, 403, that would seem to be ''none of defendants' business.'' At any rate it does not afford any substantial basis for the defense pleaded. It is held that where a party converts goods he cannot mitigate damages when sued therefor by showing that he, on his own hook and without plaintiff's consent, sold the goods and applied the proceeds on a debt owed by plaintiff. [East v. Pace, 57 Ala. 521.] Of course where after a conversion the property has been returned and such return has been accepted and retained by the owner, the one proceeded against in conversion can show such fact in mitigation of damages; but he cannot *compel* the owner to accept or agree to a disposition made of the goods converted by the wrongdoer. [Lyon v. Yates, 52 Barb. (N. Y.) 237, 244. See, also, Hamner v. Wilsey, 17 Wend. 91.] Nor can he in mitigation of damages show his *unsanctioned* and *unauthorized* application of the proceeds of his tort. [Northrup v. McGill, 27 Mich. 234, 239-240.]

To hold otherwise in the case before us would seem to permit defendants and Denny & Co. to decide for them-

selves what shall be paid plaintiff for this conversion and also to determine the controversy existing between plaintiff and Denny & Co. and the amount plaintiff owes the latter.

The judgment is affirmed. All concur.