NELSON ANDERSON, INC. & others *vs.*
JAMES J. McMANUS & others.

Suffolk.    January 4, 1956. — July 6, 1956.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Conversion. Damages,* Mitigation, For conversion. *Mortgage,* Of personal property: accounting after foreclosure, what property covered.

Evidence reported in a suit in equity did not show to be plainly wrong findings, respecting a chattel mortgage covering itemized articles of restaurant and bar equipment "together with all replacements of or substitutions for any of the above articles," that certain articles of that nature subsequently acquired by the owner of the equity of redemption were not "replacements" or "substitutions" and were not covered by the mortgage. [397]

A holder of a chattel mortgage who took into his possession and sold on foreclosure of the mortgage certain chattels belonging to the owner of the equity of redemption but not covered by the mortgage converted them. [398]

A holder of a chattel mortgage who acted as his own auctioneer at a sale in foreclosure of his mortgage was not entitled to retain a commission for his services as auctioneer out of the proceeds of the sale. [399]

A defendant who converted restaurant and bar equipment of the plaintiff by selling it at a sale in foreclosure of a mortgage not covering it was entitled to mitigate damages by amounts paid out of the proceeds of the converted property in satisfaction of another mortgage which did cover the equipment, plus an attorney's fee for collection as provided in the note secured by that other mortgage, and in satisfaction of claims of persons who as judgment creditors of the plaintiff had trusteed the defendant; but the defendant, who had purchased a conditional sale contract covering property sold to the plaintiff, was not entitled to mitigate damages by an amount he retained from the proceeds of the converted property to pay himself the balance due on that contract. [400]

BILL IN EQUITY, filed in the Superior Court on April 9, 1954.

The suit was heard by *Morton*, J.

*Bernard P. Rome*, for the defendant Stone.

No argument nor brief for the plaintiff.

WILLIAMS, J.   This is a suit by a mortgagor for an accounting by the mortgagee of the proceeds of a foreclosure sale of personal property and for the assessment of damages for its alleged conversion.   Before the trial decrees had been entered dismissing the bill against all the defendants except Jack D. Stone.   There was evidence that on November 8, 1947, the plaintiff Nelson Anderson purchased the fixtures, equipment, merchandise, and good will of a restaurant and bar in Whitman from Whitman Restaurant Co., Inc., for $29,600.   He paid the seller $10,000 in cash and gave it a chattel mortgage on the property purchased to secure the balance of $19,600.   This mortgage contained an itemized list of the mortgaged goods ending with the notation "Together with all replacements of or substitutions for any of the above articles."   The equity in the property was later conveyed to the plaintiff Nelson Anderson, Inc., a corporation organized and controlled by Anderson and his wife, the plaintiff Catherine Anderson. After one or more mesne assignments the mortgage was purchased by the defendant Jack D. Stone on February 10, 1954.   Stone sold the property at foreclosure sale on February 15, 1954, for $4,224.35.   The amount then due on the mortgage was $1,013.65.

There was evidence that out of the money received Stone, who was an auctioneer and acted as such at the sale, retained $422.44 as a ten per cent commission for his services in that capacity, $75 for the expense of "lotting" the goods for sale, and $3.60 for the cost of signs.   He paid to himself $1,013.65, the amount due on the mortgage, $200 to an attorney for services in instituting foreclosure proceedings, $80.40 to another attorney for services in connection with the sale, and $100 for newspaper advertising. To two creditors of the plaintiff corporation by whom he

had been served with trustee process he paid $274.73 to obtain his discharge as trustee. There was a second mortgage on the property dated October 10, 1953, which included a refrigeration unit held by the corporate plaintiff under a contract of conditional sale and "all . . . equipment which . . . [has] hereafter been acquired . . . either in addition to or in substitution of the foregoing." Stone paid to the holder of this second mortgage $1,477.91 which was the amount due upon it with an attorney's fee of twenty per cent as provided by the mortgage note if upon default "this note is referred to an attorney for collection." Finally he paid to himself $387.96 the balance due on the above contract of conditional sale which he had purchased at the same time he took the assignment of the mortgage. He testified that after these payments there remained in his hands $190.27.

In a report of material facts the judge found the sale to have been properly conducted and as to the credits claimed by Stone disallowed only the payment of $200 to one of the attorneys. He found that a fair and reasonable charge for the attorney's services was $50, and that the plaintiffs were entitled to be paid by Stone $190.27 plus $150 the amount of the overpayment to the attorney. He further found that "Just before the sale the plaintiffs notified the auctioneer that there was property on the premises not covered by the mortgage"; that "The auctioneer paid little or no attention to the statement, but told the plaintiffs they had no right on the premises and to get out"; that "At the sale property belonging to the plaintiffs were sold that were not covered by the mortgage"; that they "were neither replacements or substitutions"; that they were of value $2,390; and that the plaintiffs were entitled to this amount. A final decree was entered establishing the indebtedness of Stone to Nelson Anderson, Inc., in the sum of $2,730.27 with interest from the date of the filing of the bill and costs. From this decree the defendant Stone, hereinafter referred to as the defendant, appealed.

The first question for decision is the correctness of the

judge's findings in relation to the conversion by the defendant of certain property of the plaintiff corporation. This property was not described by the judge in his findings but we think that necessarily he had reference to the property which Anderson contended in his testimony was not covered by the mortgage. The articles comprising this property and their respective values at the time of the foreclosure sale, according to Anderson, were as follows: two Ajax ice makers, $1,500, one electric potato peeler, $75, one Ajax electric ice shaver, $150, one Wyotte cream dispenser, $25, one dishwashing machine, $425, one steam cooker, $45, one laminated shell for baking, $20, one electric neon sign, $300, six dozen champagne glasses, $12, twelve dozen sherbet glasses, $3, and ash trays, grapefruit and oyster forks and cups, $10. There was evidence that these articles were acquired after the mortgage was executed. It appeared that the Ajax ice makers were for the purpose of quantity manufacture of ice cubes which previously had usually been purchased. The use of the electric potato peeler and ice shaver superseded the former procedure of peeling potatoes and shaving ice by hand. The cream dispenser was an appliance dissimilar to any item listed in the mortgage. The electric dishwasher was not a replacement of the listed "Crescent dishwashing machine with five wood racks." That machine had been replaced by another which admittedly was covered by the mortgage. The one in question being inadequate to carry the load was kept only for a spare. The neon sign which read "Nelson Anderson — Fine Foods" was added to the signs already in place, which continued to be used. The other articles represented additional equipment. We think the judge was not plainly wrong in finding from the evidence that these articles were not replacements of or substitutions for articles listed in the mortgage. They seem rather to have been in the nature of additional equipment. If they were not within the class of after acquired property contemplated by the mortgage, title to them did not pass to the assignee of the mortgage on his taking them into possession. See *Blanchard* v. *Cooke,*

144 Mass. 207; *Bennett* v. *Bailey,* 150 Mass. 257, 260. The unauthorized taking of possession by the defendant and his subsequent sale of the articles constituted a conversion (*Donahue* v. *Leventhal,* 302 Mass. 393, 394) and damages in this suit should be determined as if it were an action for conversion. *Castro* v. *Linchitz,* 297 Mass. 381, 387–388.

The defendant contends that, if it be so held, he should be credited with the amounts paid to the mortgagees and the "encumbrancers" by trustee process as paid for the benefit of the plaintiffs. He relies upon *Pierce* v. *Benjamin,* 14 Pick. 356, 361, where, a tax collector having made a technically illegal seizure of the plaintiff's property for taxes and paid the taxes from the proceeds of the sale, it was said that "when the property itself has been sold and the proceeds applied to the payment of the plaintiff's debt, or otherwise to his use . . . the facts may be shown in mitigation of damages." This rule was applied in *Kaley* v. *Shed,* 10 Met. 317, where the converted property was taken from the converter by attachment in an action against the plaintiff. See *King* v. *Bangs,* 120 Mass. 514, 515; *Dahill* v. *Booker,* 140 Mass. 308, 309; *Clabburn* v. *Phillips,* 245 Mass. 47, 49. In the case last cited it was said on the authority of the *Pierce* case that "in ordinary actions to recover damages for the conversion of personal property, the defendant may show in reduction of damages that he has sold the property and applied the proceeds to the payment of a debt due to him from the plaintiff." In other jurisdictions mitigation of damages in actions for conversion is generally limited to cases where the converter has acted under color of legal process and has used the proceeds of the conversion in accordance with his conception of official duty. See *East* v. *Pace,* 57 Ala. 521, 524; *Northrup* v. *McGill,* 27 Mich. 234, 239–241; *Farmers & Merchants National Bank* v. *Przymus,* 161 Minn. 85; *Michael-Swanson-Brady Produce Co.* v. *Oregon Short Line Railroad,* 219 Mo. App. 419; *Clements* v. *Eiseley,* 63 Neb. 651, 655–657. It is said in Restatement of Torts, § 923, that a tort-feasor cannot diminish damages for conversion by paying the plaintiff's debts without his

consent unless the payment was made "unofficiously" from the proceeds of the converted property. From accompanying comments it appears that a payment is deemed "unofficious" when paid by one, holding an office similar to that of sheriff, who after an improper levy pays out money by mistake, in the course of what he believes to be his official duty. The rule as to mitigating the damages for which a converter must respond is equitable in nature and ought not to apply to one who seizes the property of another without color of authority and uses the proceeds to pay a debt due to him. See *East* v. *Pace,* 57 Ala. 521, 524; *Lyon* v. *Yates,* 52 Barb. S. C. 237. We think, notwithstanding the general statement appearing in *Clabburn* v. *Phillips,* that the rule of the *Pierce* case should be applied only in cases where the enforcement of the full measure of damages for conversion would effect a manifest injustice.

In the present case the defendant has taken and sold personal property of the plaintiff corporation the fair market value of which is found to have been $2,390. From the sale of this property and the property covered by the mortgage the defendant received $4,224.35. The evidence does not disclose the amount received from the sale of the converted items alone but for purposes of accounting for the proceeds it may be assumed, in the absence of evidence to the contrary by the converter, that their market value was realized. On this assumption, after the sale the defendant held $1,834.35 the amount received from the sale of the mortgaged property and $2,390 from the sale of the converted property, for which amounts, as mortgagee and converter, he was liable to account to the plaintiff corporation. After paying the legitimate expenses of the sale amounting to $309 and retaining the balance of $1,013.65 due on his mortgage the defendant had $511.70 as a surplus from the sale. He was not entitled to retain $422.24 as a ten per cent commission for acting as his own auctioneer. He could hardly be employed as an agent for himself (see *Bent* v. *Cobb,* 9 Gray, 397) and this charge against the mortgagor, we think, was unjustified. The surplus of $511.70 was

properly payable to the second mortgagee. The amount then due upon the second mortgage was $1,058.31. This mortgage covered all of the property sold by the defendant including the converted items which although not replacements or substitutions were after acquired property. The balance of $546.61 due on the second mortgage, plus an attorney's fee of $419.60 for collection as provided in the mortgage note, was properly paid out of the proceeds of the sale of the converted property. The defendant paid to creditors of the plaintiff corporation, G. B. Raffetto Inc. and White Rock Bottling Company, who had trusteed him on what appear to be claims based on judgments the respective sums of $143.55 and $131.18. These payments must be considered to have been made from the proceeds of the conversion. They enured to the benefit of the plaintiff corporation by relieving it of obligations which could not be disputed and should be credited to the defendant in mitigation of the damages which he must pay. Deducting the amounts of these payments totaling $1,240.94 from $2,390 the market value of the converted property leaves $1,149.06 as the net amount of the damages for the conversion which the defendant is obligated to pay.

The defendant is not entitled to have his damages mitigated in the amount of $387.96, which was retained by him in payment of the balance due on the contract of conditional sale. To credit him with this amount would have the inequitable result of permitting a tort-feasor to pay the debts owed to him by converting to his own use his debtor's property.

The final decree must be modified by striking out the figure $2,730.27 therein stated and substituting the figure $1,149.06, on which substituted amount interest is to be paid from April 9, 1954. The decree should also be modified by inserting a provision that the bill be dismissed so far as the plaintiffs Nelson and Catherine Anderson are concerned. As so modified the decree is affirmed.

*So ordered.*