DANA T. GALLUP, administrator, *vs.* HUBERT C. BARTON.

Middlesex.    December 2, 1941. — March 29, 1943.

Present: FIELD, C.J., DONAHUE, DOLAN, & COX, JJ.

*Agency,* What constitutes, Termination of agency. *Payment. Executor and Administrator,* What are assets of estate, Executor de son tort, Insolvent estate. *Probate Court,* Petition.

On the facts, where a check was sent with instructions to the payee to distribute its proceeds among certain creditors of the sender, the payee was not an agent of the creditors to receive payment for them, but was an agent of the sender to make payment to them, and his authority from the sender was terminated by the death of the sender before payment was made.

A debt was not paid by the mere transmission of money by the debtor to his agent for payment to the creditor.

Money transmitted by a debtor to his agent for payment to the creditor remained an asset of the debtor's estate upon his death occurring before the agent made the payment, and the agent became an executor de son tort by making the payment after the death.

Indebtedness of an insolvent decedent to an ordinary creditor was not one which the administrator of his estate "might have been compelled to pay" within G. L. (Ter. Ed.) c. 195, § 15, and under that statute one who used money belonging to the estate to pay that creditor was liable to the administrator as an executor de son tort for the full amount so used.

A certain petition in a Probate Court by the administrator of an insolvent estate seeking to recover as an asset of the estate money transferred by the decedent to the respondent was sufficient to support a decree ordering the respondent to pay the money on the ground that he was liable as an executor de son tort under G. L. (Ter. Ed.) c. 195, §§ 14, 15, although the allegations of fact appeared to have been framed on the theory that the transfer was in fraud of creditors and a preference.

PETITION, filed in the Probate Court for the county of Middlesex on January 17, 1939, by the administrator with the will annexed of the estate of Everett S. Noble.

The substantial allegations of the petition were that Noble, "acting in contemplation of death," transferred $1,200 to the respondent on November 29, 1938, which left Noble insolvent; that the transfer "was made by the said Noble with a view to prevent said property from com-

ing to his estate, and to prevent the same from being distributed to his rightful creditors, and was made to hinder, delay and defraud the creditors of said Noble"; that at the time of the transfer the respondent "was not a creditor of said Noble, nor was the transfer made for consideration, but was made to hinder, delay and to defraud the creditors of said Noble"; and that the respondent "at the time of receiving said transfer knew the said Noble was insolvent." The prayers of the petition were: "1. That the said transfer . . . be declared . . . to be void, and that the petitioner recover from the respondent the said property as assets of the estate. 2. That the respondent . . . be adjudged to be indebted to the petitioner in the sum of $1,200 and that he be ordered to pay the same forthwith to the petitioner. 3. And for such other and further relief as . . . may seem meet and proper."

The case was heard on a master's report by *Beane*, J.

*H. Katz*, for the respondent, submitted a brief.

No argument nor brief for the petitioner.

FIELD, C.J. This is a petition brought in the Probate Court by the administrator with the will annexed of the estate of Everett S. Noble, late of Cambridge, deceased, against Hubert C. Barton to recover the sum of $1,200 transferred by the decedent to the respondent. The case was referred to a master who filed a report. By a decree of the court the report was confirmed and the respondent was ordered to pay to the petitioner the sum of $1,200. The respondent appealed.

There was no error.

The facts found by the master include the following: The decedent died by his own hand on December 3, 1938. At "the time of his death . . . he was, and for some considerable period prior thereto had been, hopelessly insolvent." This insolvent condition extended at least as far back of his death as November 19, 1938. On that day the decedent borrowed from an aunt the sum of $1,200, and on November 28, 1938, "by her order" the money so borrowed was deposited to his credit in the Cambridge Trust Company, herein referred to as the bank. On the

next day he caused a cashier's check for $1,200 to be issued by the bank payable to the order of the respondent. The decedent retained possession of this check until December 2, 1938, when he sent it by mail with a letter to the respondent. The respondent received the letter and the check on the next day, after the death of the decedent and after the respondent had learned of the decedent's death. The decedent's letter directed the respondent to distribute the proceeds of the check among the wife and three children of the respondent in stated amounts. None of the money was to be retained by the respondent. The respondent cashed the check on December 5, 1938, and on that day distributed the proceeds thereof among his wife and children in accordance with the directions contained in the letter of the decedent. It is the proceeds of the check so distributed by the respondent among members of his family that the petitioner seeks by this petition to recover from the respondent.

It is unnecessary to consider the precise legal relation between the decedent and the bank created by the facts found. See, however, *American Express Co.* v. *Cosmopolitan Trust Co.* 239 Mass. 249, 252–253; *Foreign Trade Banking Corp.* v. *Cosmopolitan Trust Co.* 240 Mass. 413, 414–415; *Gellert* v. *Bank of California, National Association,* 107 Ore. 162; Note, Transmission of Money and Sale of Credit, 33 Yale Law Journal, pages 177–184 and cases cited. At any rate, the respondent acquired no rights upon the cashier's check in which he was named as payee until it was delivered to him, whatever rights and obligations between the bank and the decedent were previously created. See G. L. (Ter. Ed.) c. 107, §§ 18, 53; *Liberty Trust Co.* v. *Tilton,* 217 Mass. 462, 465; *Goodman* v. *Gaull,* 244 Mass. 528, 529. On the facts found the decedent was not the agent of the respondent, and consequently delivery by the bank to the decedent was not delivery to the respondent. We assume, however, in favor of the respondent that the mailing of the check by the decedent to the respondent constituted delivery thereof to the respondent though the check was not received by the respondent until after the death of the decedent,

and that, by virtue of such delivery of the cashier's check to the respondent, the respondent as the payee named therein was entitled to cash it.

The cashier's check, however, was merely a means of transmitting money of the decedent to the respondent. On the facts found this money was not transmitted to the respondent as a gift, or in payment of indebtedness of the decedent to the respondent, for he was not a creditor of the decedent. No consideration for the cashier's check or for the proceeds thereof passed from the respondent to the decedent. Furthermore, the respondent was not the agent of his wife and children, who were creditors of the decedent, to receive payment of the decedent's indebtedness to them, and consequently the delivery of the cashier's check to the respondent did not constitute a payment by the decedent to these creditors of his indebtedness to them. The money of the decedent was transmitted by him to the respondent for the payment of these creditors in accordance with instructions given to the respondent by the letter of the decedent accompanying the cashier's check. Under these instructions the money transmitted by the decedent to the respondent was to be used by the respondent, as agent of the decedent, to pay these creditors. But the authority of the respondent, conferred by the letter of the decedent, to make such payment from the money of the decedent transmitted to the respondent by means of the cashier's check was terminated by the death of the decedent before the payment was made by the respondent. *Mitchell* v. *Weaver*, 242 Mass. 331, 335. *Lewis* v. *Commissioner of Banks*, 286 Mass. 570, 574. Am. Law Inst. Restatement: Agency, §§ 120, 386. And this would be true even if, contrary to the facts here found, the respondent had not had notice of the death of the decedent. § 120, comment b; § 386, comment d. General Laws (Ter. Ed.) c. 107, § 17, permitting payment of a check after the death of the drawer, does not affect the point here decided. See *Burrows* v. *Burrows*, 240 Mass. 485, 488.

Since the money of the decedent transmitted to the respondent for the payment of creditors of the decedent was not used for that purpose while the respondent had authority

from the decedent to do so, such money constituted assets of the estate of the decedent upon his death. The payment therefrom of such money to these creditors by the respondent was an intermeddling by the respondent with personal property of the decedent within the meaning of G. L. (Ter. Ed.) c. 195, §§ 14, 15 — statutes that are declaratory of the common law. *Clabburn* v. *Phillips*, 245 Mass. 47, 51. See *Rohn* v. *Rohn*, 204 Ill. 184, 188–189; *Rudd* v. *Rudd*, 184 Ky. 400, 406–407; Woerner, American Law of Administration (3d ed.) §§ 189–191; Williams, Executors & Administrators (12th ed.) 157. General Laws (Ter. Ed.) c. 195, § 14, provides: "Whoever injuriously intermeddles with any personal property of a deceased person, without being thereto authorized by law, shall be liable as an executor in his own wrong to the persons aggrieved." Section 15 provides: "An executor in his own wrong shall be liable to the rightful executor or administrator for the full value of the personal property of the deceased taken by him and for all damages caused to the estate by his acts; and he shall not be allowed to retain or deduct any part of such estate, except for funeral expenses or debts of the deceased or other charges actually paid by him and which the rightful executor or administrator might have been compelled to pay." The respondent, therefore, is liable to the petitioner, the administrator with the will annexed of the estate of the decedent, for the entire sum of $1,200, unless the payment of this amount to the members of the family of the respondent was within the exceptions stated. Such payment obviously was not for funeral expenses. And it was not a payment of "debts . . . or other charges . . . which the rightful executor or administrator might have been compelled to pay." By reason of the hopeless insolvency of the decedent his rightful executor or administrator could not have been required to pay the decedent's debts to the wife and children of the respondent. This point was decided in *Clabburn* v. *Phillips*, 245 Mass. 47, 51, where the defendants had used assets of a hopelessly insolvent decedent to pay a debt due from the decedent to the defendants. The court there said, in holding the defendants liable for the full amount of the

assets of the decedent used to pay a debt of the decedent to the defendants: "Nothing in this record indicates that the administrator might have been compelled to pay the claims of the defendants, because the estate appears to have been hopelessly insolvent." This language is applicable to the present case, and it is immaterial that here the property of the estate of the decedent was used by the respondent to pay debts of the decedent to persons other than himself. An executor in his own wrong cannot "make any valid disposition of the goods and effects" of the decedent (*Campbell* v. *Sheldon*, 13 Pick. 8, 24), and when he makes a disposition of such goods and effects he is relieved from liability therefor only so far as such disposition is within the exceptions stated in G. L. (Ter. Ed.) c. 195, § 15. Upon this record the payment by the respondent of the sum of $1,200 to the members of his family is not within any of these exceptions. The facts found by the master, therefore, support the decree ordering the respondent to pay the sum of $1,200 to the petitioner.

The gist of the petition is that the decedent transferred to the respondent the sum of $1,200 which constituted assets of the estate of the decedent at the time of his death. The prayers of the petition are that the petitioner recover the sum of $1,200 from the respondent. The allegations of fact in the petition, however, are framed on the theory that the transfer of the sum of $1,200 by the decedent to the respondent was made to "hinder, delay and defraud" the creditors of the decedent and, somewhat more vaguely, that such transfer constituted a preference under G. L. (Ter. Ed.) c. 198, §§ 10A, 10B. There are, however, allegations that the transfer was made only four days before the death of the decedent, that the decedent was then insolvent, that the respondent was not a creditor of the decedent and that the transfer to him was made without consideration. In view of the "plain and ultimate purpose" of the petition as disclosed by the allegations of fact and the prayers (see *Manazir* v. *Dahood*, 302 Mass. 290, 293), we can hardly say that the decree ordering the respondent to pay the sum of $1,200 to the petitioner, though based

upon the ground here stated, is beyond the scope of the petition.

The sole contention of the respondent is that there can be no recovery against him on the ground that the transfer of the sum of $1,200 to him by the decedent constituted an illegal preference for the reason that the respondent was not a creditor of the decedent, relying upon *Rubenstein* v. *Lottow*, 220 Mass. 156, 164. Since, however, the decision of the present case does not rest upon the ground that the transfer constituted an illegal preference, and this defence is inapplicable to the ground upon which the case is decided, we need not consider this contention.

*Decree affirmed.*