*Western District*

## HILDA A. SMITH

### v.

## THE MERCHANTS NATIONAL BANK OF LEOMINSTER

*RILEY, P.J.* The plaintiff's declaration in this action of contract in substance alleges that she and her late husband, John W. Smith, had entered into a contract with the defendant under the terms of which the defendant agreed to accept deposits of money from the plaintiff and her husband and to pay out the said money on check or order signed by the plaintiff or her husband and that in the event of the death of either the plaintiff or her late husband, the money in the account with the defendant would then belong to the sur-

vivor and would be paid to the survivor's order; that her husband, John W. Smith, died on September 4, 1950, that the death became known to the defendant on September 5, 1950, and that on September 12, 1950 the defendant wrongfully and without authorization or order of the plaintiff and in violation of the contract withdrew the sum of $6390 from the account; that the defendant has refused to return or replace the said money in the said account in spite of requests by the plaintiff so to do and further that she was the owner of an account with the defendant and that the sum of $6390 was withdrawn without order or authorization by the plaintiff and that thereafter the defendant refused to pay certain checks drawn by the plaintiff against the said amount of $6390 and that the defendant is indebted to the plaintiff for the said amount.

The defendant's answer is a general denial and an allegation that any money owned to the plaintiff by the defendant has been paid in full.

The trial judge found that on January 24, 1946 the plaintiff went with her husband, John W. Smith, to the defendant bank and opened a bank account in their names jointly, signing the usual card by which it was agreed that all deposits in such account should be their joint property, payable to either or the survivor; that the defendant accepted the account on such terms; that thereafter both the plaintiff and her husband deposited funds in and withdrew funds from said joint account; that John W. Smith was associated with his father, John L. Smith, in an automobile business under the name of Smith Motors; that Smith Motors kept its bank account in the Clinton Trust Co.; that during the last three days of August, 1950 John W. Smith, for his own convenience, made three deposits in the joint account totaling $6390, which deposits were made up of funds rightfully in his possession but belonging to Smith Motors; that on August 31st John W. Smith drew a check for $6390 on the joint ac-

count payable to Smith Motors which check was deposited in the latter's account in the Clinton Trust Co.; that on September 4, 1950 John W. Smith died; that said check for $6390 was forwarded for collection by the Clinton Trust Co. through the Merchants National Bank of Boston, and the Federal Reserve Bank of Boston to the defendant bank where it was received on Sept. 5th after the defendant had learned of the death of John W. Smith; that the defendant bank caused said check to be protested and returned to the Federal Reserve Bank; that on Sept. 8th John L. Smith and the president of the Clinton Trust Co. went to the defendant bank and had a conference with the president of the defendant; that as a result of that conference the check of $6,390 was sent as a collection item from the Clinton Trust Co. directly to the defendant bank where it was received on Sept. 12th; that the defendant then paid said check and charged it against the joint account; that the plaintiff, until much later, was not informed either of the three deposits totaling $6,390 nor of the check of that amount, and never consented to its being charged against the account; and that the defendant thereafter refused the plaintiff's demand for the $6,-390. He found for the plaintiff in the amount of $6,390.

It also appears in the judge's finding that he was informed by counsel at the trial that a bill in equity had been brought in the Superior Court wherein the plaintiff and defendant in this action were among the parties named, and wherein they were enjoined from taking advantage of any judgment rendered in the District Court of Leominster in this action.

The defendant contends that payment of the check in question by it was authorized by G. L. Chapter 107, Section 17 which provides:

"A depositary of funds subject to withdrawal by check or demand draft may pay a check or

demand draft drawn on it by a depositor having funds on deposit to pay the same, notwithstanding his death, upon presentation within ten days after its date."

The plaintiff on the other hand contends that this statute does not apply to a joint account such as the one in the case at bar and that even if it does, the payment by the defendant of the check more than ten days after its date, it having previously declined payment, nullifies for it the protection of the statute. Section 17 above set out, was first enacted by Chapter 210, Section 1 of the Acts of 1885 in substantially the same language and has come down through various codifications of the statutes with only minor changes in phraseology. Section 2 of the aforesaid Chapter 210 of the Acts of 1885 relates to savings bank deposits and reads as follows:

"Savings banks and institutions for savings are hereby authorized and empowered to pay any savings bank order, drawn by any person who has funds on deposit to meet the same, notwithstanding the death of such drawer in the interval of time between signing such savings bank order and its presentation for payment, when said presentation shall be made within thirty days after the date of such savings bank order, and at any subsequent period, provided the depositary has not received actual notice of the death of the drawer."

The provisions of this section of the statute without substantial change now appear in G. L. Chapter 168, Section 52. After Section 2 of Chapter 210 of the Acts of 1885 was re-enacted in a codification of the savings bank laws by the Acts of 1908, Chapter 590, Section 65, it was construed by the Supreme Court in *Brannen* v. *Eliot Five Cents Savings Bank,* 211 Mass. 532. It was there held that if a depositor in a savings bank delivers to another person, his bank book and an order in

writing on the bank to pay to such person the amount standing to the depositor's credit with the bank, the bank is liable to the drawee of the order although the book and order were not presented until after the depositor's death and the bank had notice of the death, notwithstanding the by-laws of the defendant bank that on the death of a depositor, the money standing to his credit should be paid to the legatees, heirs-at-law or legal representatives of such depositor. The Court says at page 534:

> "There is nothing in the statute referred to (St. 1908 c. 590, § 65) or the by-laws to prevent the plaintiff from maintaining this action. This statute merely provides that a bank may pay an order after the death of the depositor if presented within thirty days after its date. A similar provision exists in regard to the payment of checks. R.L. c. 73, § 17." (Now G.L. Chap. 107, sec. 17) "The by-law provides for the payment, after the death of the depositor, of money standing to his credit to his legatees, heirs-at-law, or legal representatives, and has nothing to do with and does not affect in any way a transfer of a deposit by the depositor."

While the right of the drawee on a savings bank order and that of a payee on a check against a bank upon which a check is drawn may be different, the right of either bank to make payment to the payee within the terms of this statute seem to be established. As was said in *Burrows* v. *Burrows*, 240 Mass. 485, and *Callup* v. *Barton*, 313 Mass. 379, G. L. Chapter 107, Section 17 merely protects the bank in making payment according to its provisions and does not affect the rights of the parties between themselves.

We cannot see that this statute draws any distinction between individual accounts, joint accounts, or partnership accounts. Whether the deposit is that of an individual, a joint deposit, or a

partnership deposit, upon the death of the depositor, certain rights accrue to the legal representatives of the depositor, the surviving joint depositor, or the surviving partner in a partnership. We see no logical reason for making a judicial determination that the statute in question does not apply to joint bank deposits. Such a construction would be unduly forcing the principle of legislative intention and would again cause confusion in banking and business circles which undoubtedly existed before this statute was originally passed. There seems to have been some doubt as to the common law rule as to the effect of the death of the drawer of a check and the right of a bank to make payment thereof after his death. Brannon's N.I.L. (7 ed.) Sec. 189 note. We are of the opinion that if the bank had paid the check in question when it was presented to it on September 5th, it would have been protected in such payment and the plaintiff could not recover in this action.

It remains to be considered whether the fact that when the check was presented for payment to the defendant bank on September 5th, it refused to pay the same and caused it to be protested, but later reconsidered its action and made payment on September 12th, precludes the defendant from having the benefit of the statute in question. The check was dated August 31, 1950 and the presentment of it on September 5th was clearly within ten days of its date. The payment of the check on September 12, 1950 was obviously not within ten days of the date of the check.

We do not think that G. L. Chapter 107, Section 161 applies to the case at bar as argued by the defendant. That section provides for the acceptance of an incomplete bill, or one that is overdue, or has been dishonored by a previous refusal to accept, or by non-payment. It further provides that when a bill payable after sight is dishonored by non-acceptance and the drawee subsequently accepts it, the holder, in the absence of any different agreement, is entitled to have the bill accepted

as of the date of the first presentment. It is true that G. L. Chapter 107, Section 208 provides that a check, except where otherwise provided in this chapter, shall be subject to the provisions relating to bills of exchange, which includes section 161. However, the court, in *South Boston Trust Co.* v. *Levin,* 249 Mass. 45 at 48 in construing section 85 of this chapter, as applied to a check, spoke as follows:

> "Section 208 provides that a check, except where otherwise specified in the act, shall be subject to the provisions relating to bills of exchange, which include § 85. But § 85 relates only to the effects of acceptance; and acceptance cannot be construed to mean payment, or to include payment. Acceptance, as defined in § 18 is, 'an acceptance completed by delivery or written notification.' This is wholly inconsistent with payment."

and further at page 49,

> "We are unable to agree with this statement, as there is no similarity between acceptance and payment; payment discharges the instrument, and no one else is expected to advance anything on the faith of it; acceptance contemplates further circulation, induced by the fact of acceptance. The rule, that the acceptor makes certain admissions which will inure to the benefit of subsequent holders, has no applicability to payment of the instrument where subsequent holders can never exist."

Furthermore, a check is a bill of exchange payable on demand and not after sight. G.L. Chapter 107, Section 208.

However, it will be noted that the statute simply requires presentation for payment within ten days of the date of the check. There is no requirement in the statute that payment of the check must be made within ten days of its date. We do not think that the statute requires payment

to be made simultaneously with its presentation as argued by the plaintiff as, in the ordinary course of business, and as appears in the evidence in this case, a check goes through several banking institutions before it is actually paid.

In a complicated situation such as the one shown in the case at bar where the interest of other parties than the maker and payee of the check seem to be involved, it would seem that the defendant bank should be allowed reasonable time to determine whether or not the check should be honored. It is to be observed that while apparently some of the officials of the bank knew of the death of John W. Smith at the time the check was deposited in the defendant bank, the report states that the bank had no official or written notice of Smith's death until some time after the payment of the check. Consequently we do not think that the bank was estopped by once refusing payment of the check from honoring it a few days later in view of the fact that the check was presented to them originally for payment within the ten days prescribed in the statute.

The trial judge in his findings makes no reference to the statute in question but simply states:

> "Under the facts I rule that on the death of John W. Smith, the funds in the joint account became the property of the survivor, Hilda A. Smith, and I therefore find for the plaintiff in the amount of $6,390."

However he refused several of the defendant's requests for rulings among which were the following:

> "21. Upon all the evidence The Merchants National Bank of Leominster properly paid the check dated August 31, 1950, in the amount of Six Thousand Three Hundred Ninety Dollars ($6,390.00) and the plaintiff, Hilda A. Smith, cannot recover in this action."

[98]

"32. As a matter of law G. L. Ch. 107, Sec. 17 enables a bank where sufficient funds are on deposit to pay a check notwithstanding the death of the drawer if presented within ten days after its date."

"33. As a matter of law, G.L. Ch. 107, Sec. 17 does not require that a check drawn by a deceased person must be paid within ten days of its date."

"34. As a matter of law a check drawn by a deceased person may be paid under the terms of G.L. Ch. 107, Sec. 17, if presented within ten days of its date, within a reasonable time after such presentment."

"41. As a matter of law the check dated August 31, 1950, in the amount of $6,390.00 was properly paid by the defendant, The Merchants National Bank of Leominster and the plaintiff, Hilda A. Smith, cannot recover in this action."

We think these rulings should have been given. As the facts are not in dispute and the case has been fully tried, judgment for the defendant is ordered under the provisions of G. L. Chapter 231, Sections 110, 124.