HILDA A. SMITH *vs.* THE MERCHANTS NATIONAL BANK OF LEOMINSTER.

Worcester.   September 21, 1953. — November 2, 1953.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Bank and Banking.   Bills and Notes*, Check.   *Joint Tenants.*

The provisions of G. L. (Ter. Ed.) c. 107, § 17, apply to checks drawn on joint bank accounts and authorized a bank as depositary of funds in a joint checking account of husband and wife to pay a check drawn thereon by the husband and presented after his death but within ten days of its date.   [485]

The provisions of G. L. (Ter. Ed.) c. 107, § 17, authorize payment of a check by the drawee bank after the death of the drawer and more than ten days after its date if it is presented within such ten days.   [486]

CONTRACT OR TORT.   Writ in the District Court of Leominster dated May 14, 1951.

The action was heard by *Robbins*, J.

*Morton C. Jaquith*, (*George T. Casey* with him,) for the plaintiff.

*Carl H. Amon, Jr.*, for the defendant.

COUNIHAN, J.   This is an action of contract[2] whereby the plaintiff seeks to recover the amount of a check which

---

[2] The writ describes this action as in contract or tort but the declaration sounds in contract and we so consider it.

was paid by the defendant. This check was drawn by John W. Smith, the husband of the plaintiff, on a joint account in the defendant bank, standing in the name of John W. Smith and the plaintiff. The trial judge found for the plaintiff but upon report the Appellate Division reversed the finding of the judge because of his failure to give certain requests of the defendant and ordered judgment to be entered for the defendant by virtue of G. L. (Ter. Ed.) c. 231, §§ 110, 124. The action comes here upon an appeal from that order. There was no error.

We summarize the findings of the judge. On January 24, 1946, the plaintiff and John W. Smith opened a checking account with the defendant in their names jointly, signing the usual signature card which provided that all deposits in this account should be their joint property, payable to either or the survivor on death of either, and that either or both could draw checks upon such account. Thereafter from time to time the plaintiff and John W. Smith individually or jointly deposited funds in and withdrew by check funds from this account. John W. Smith was employed by his father, John L. Smith, who conducted an automobile business in Leominster under the name of Smith Motors. The banking account of Smith Motors was in the Clinton Trust Company in Clinton. During the last three days of August, 1950, John W. Smith, who lived in Leominster, for his own convenience made three deposits in this joint account with the defendant totaling $6,390. The funds represented by these deposits were rightfully in the possession of John W. Smith, but actually belonged to Smith Motors, being the proceeds of sales of automobiles owned by Smith Motors. On August 31, 1950, John W. Smith individually drew a check for $6,390 upon the joint account to the order of Smith Motors and deposited it for the account of Smith Motors in the Clinton Trust Company. John W. Smith died on September 4, 1950. This check was forwarded for collection by the Clinton Trust Company through The Merchants National Bank of Boston and the Federal Reserve Bank of Boston

to the defendant where it was received and presented for payment on September 5, 1950. Because some employees of the defendant had learned of the death of John W. Smith payment of this check was refused and it was protested. On September 8, 1950, the president of the Clinton Trust Company, John L. Smith and another son had a conference with the president of the defendant at which the circumstances of the deposit of $6,390 in the joint account with the defendant and the drawing of this check to Smith Motors were fully explained. As a result it was agreed that the check should be forwarded by the Clinton Trust Company to the defendant for collection. This was done and the defendant on September 12, 1950, honored the check, charging it to the joint account. The defendant was not officially notified of the death of John W. Smith until after October 1, 1950.

On these facts which are not in dispute the defendant contends that it was authorized to pay this check by virtue of G. L. (Ter. Ed.) c. 107, § 17, which reads: "A depositary of funds subject to withdrawal by check or demand draft may pay a check or demand draft drawn on it by a depositor having funds on deposit to pay the same, notwithstanding his death, upon presentation within ten days after its date."

The plaintiff asserts that this statute does not apply to joint checking accounts and that, even if it does, the payment by the defendant of this check more than ten days after its date, having previously refused payment upon presentation within the ten day period, does not bring the defendant within the protection afforded by the statute. The plaintiff further argues that because of the contract made with the defendant by the joint account owners when this account was opened, she as the surviving owner of the account was entitled to payment of the full amount of the balance in the account upon the death of the other coöwner.

The questions to be determined by us are: 1. Do the provisions of G. L. (Ter. Ed.) c. 107, § 17, apply to joint accounts so as to allow the defendant to pay the check

drawn by the plaintiff's husband upon presentation within ten days of its date notwithstanding the death of the drawer? 2. Do the provisions of G. L. (Ter. Ed.) c. 107, § 17, allow the defendant to make payment of a check more than ten days after its date if it is presented within ten days after its date, notwithstanding the death of the drawer? We believe that the answer to each of these questions must be in the affirmative.

The authority of a depositary to pay checks drawn and presented for payment in circumstances similar to those in the present case was first recognized by St. 1885, c. 210, § 1, and savings banks were accorded similar protection in § 2.[1] Chapter 107, § 17, is in substantially the same form as St. 1885, c. 210, § 1. General Laws (Ter. Ed.) c. 168, § 52, is in substantially the same form as St. 1885, c. 210, § 2. It appeared earlier in our statutes also as St. 1908, c. 590, § 65, and as such was construed in *Brannan* v. *Eliot Five Cents Savings Bank*, 211 Mass. 532. That was a case involving the payment of a deposit in a savings bank to the holder of an order in writing from a depositor upon presentation of the bank book and order within the time prescribed after the bank had notice of the death of the depositor notwithstanding the by-laws of the bank providing that, upon death of a depositor, money standing to his credit should be payable to the legatees, heirs at law, or legal representatives of such depositor. At page 534 it was said: "There is nothing in the statute referred to (St. 1908, c. 590, § 65) or the by-laws to prevent the plaintiff from

---

[1] Statute 1885, c. 210, reads: "Section 1. Any depositary subject to withdrawal by check or demand draft may pay any check or demand draft drawn by any person who has funds on deposit to meet the same, notwithstanding the death of such drawer in the interval of time between drawing such check or demand draft and its presentation for payment, when such presentation shall be made within ten days after the date of such check or demand draft. Section 2. Savings banks and institutions for savings are hereby authorized and empowered to pay any savings bank order, drawn by any person who has funds on deposit to meet the same, notwithstanding the death of such drawer in the interval of time between signing such savings bank order and its presentation for payment, when said presentation shall be made within thirty days after the date of such savings bank order; and at any subsequent period, provided the depositary has not received actual notice of the death of the drawer."

maintaining this action. The statute merely provides that a bank may pay an order after the death of the depositor if presented within thirty days after its date. *A similar provision exists in regard to the payment of checks.* R. L. c. 73, § 17 [a forerunner of c. 107, § 17] [emphasis supplied]. The by-law provides for the payment, after the death of the depositor, of money standing to his credit to his legatees, heirs at law, or legal representatives, and has nothing to do with and does not affect in any way a transfer of a deposit by the depositor."

While it may be true that the right of a holder of a savings bank order and that of a payee against a bank upon which a check is drawn may be different, the right of either bank to make payment to the holder or payee within the terms of c. 168, § 52, or c. 107, § 17, seems to be established. Either statute protects a bank making such payment according to the provisions of such statute and does not affect the rights of the parties inter se. *Burrows* v. *Burrows,* 240 Mass. 485, 488. *Gallup* v. *Barton,* 313 Mass. 379, 382.

We adopt the reasoning and the language in the opinion of the Appellate Division in this case wherein it was said, "We cannot see that this statute [c. 107, § 17] draws any distinction between individual accounts, joint accounts, or partnership accounts. Whether the deposit is that of an individual, a joint deposit, or a partnership deposit, upon the death of the depositor, certain rights accrue to the legal representatives of the depositor, the surviving joint depositor, or the surviving partner in a partnership. We see no logical reason for making a judicial determination that the statute in question does not apply to joint bank deposits. Such a construction would be unduly forcing the principle of legislative intention and would again cause confusion in banking and business circles which undoubtedly existed before this statute was originally passed."

We believe that if this check had been paid by the defendant when it was first presented on September 5, 1950, it would have been protected in making such payment and the plaintiff could not recover in this action.

We now consider the second question presented to us which is whether the defendant has the benefit of the statute when it paid this check on September 12, 1950, obviously more than ten days after its date. The statute, however, only requires presentation for payment within ten days after the date of a check and in this respect it was complied with when the defendant received this check on September 5, 1950. No limitation of the time of payment is imposed by the statute if the provision for presentation is complied with. We do not think that payment must be made simultaneously with presentation as argued by the plaintiff. In a complicated situation such as appears in the present case where the rights of parties other than the maker and payee of the check are concerned, it would seem proper that a bank be allowed a reasonable time to make inquiry to determine the circumstances of the drawing of the check before deciding whether or not to honor a check after it is presented for payment.

If the Legislature desired to impose a limitation upon the time of payment of a check it could readily have done so as it did in limiting the time for presentation of it by c. 107, § 17, or in c. 107, § 209, which provides (where the death of a drawer is not involved) that a check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay.

*Order of Appellate Division affirmed.*